# Case No. 8,513.

## LORING v. DOWNER.

[1 McAll. 360.] [1]

Circuit Court, N. D. California. July Term, 1858.

EQUITY—PLEADINGS IN COMMON-LAW FORM—DISTINCTION IN FEDERAL COURTS—EQUITY AND LAW—EQUITABLE RIGHT.

1. An equitable right cannot be enforced in a common-law form. and as a legal right, on the equity side of this court.

2. The distinction between the enforcement of legal rights and the pursuit of equitable remedies in the circuit court, United States, is well defined by law, and must be maintained.

[Cited in Hall v. Yahoola River Min. Co., Case No. 5,955.]

3. The right sought in this case is equitable; the removal of a cloud from title; and should

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

[1] [Reported by Cutler McAllister, Esq.]

therefore have been enforced on the equity side of this court.

[Cited in Lamb v. Farrell, 21 Fed. 12.]

[Appeal from the district court of the United States for the district of California.]

The case was originaly brought in the district court of the United States for the Northern district of the state of California, when that court was in the exercise of the powers of a circuit court of the United States. On a demurrer filed in that court to the complaint, the objection to the jurisdiction of the court raised by the demurrer was overruled. Subsequently, under a recent act of congress organizing this tribunal, the case has been transferred to this court; who having ordered a re-argument, the case now comes before it on bill and demurrer. The following in totidem verbis is a copy of the complaint filed in the district court of the United States for the Northern district of the state of California, with exception of the description of the property:—"Samuel C. Loring v. George Downer. At Common Law. Samuel C. Loring, who is a citizen of the state of Massachusetts, complains of the defendant, who is a minor over fourteen years of age, and citizen of the state of California residing in said district. For that the plaintiff is seized and possessed of (certain real estate described in the complaint), and that the defendant claims an estate or interest in said real estate adverse to the plaintiff which is invalid, but which is wrongfully used by the defendant to annoy and harass the plaintiff's enjoyment of said real property and to obstruct and prevent the free use and disposition of the same. Wherefore, the plaintiff prays that the defendant may be summoned to answer, that a guardian may be appointed by the court, that the defendant may be required to disclaim, or produce such claim, estate, or interest; that the same may be duly determined by the judgment of this court according to the statutes of this state."

Sloan, Brosnan & Groat, for plaintiff.
Joseph B. Wells, for defendant.

McALLISTER, Circuit Judge. The complaint professes in its caption to be a common-law pleading. The defendant so treats it, and both parties so consider it. In the brief of plaintiff's counsel it is stated: "This action is a proceeding at law, the right to be tried is a legal right, as much so as if the defendant had of his own independent motion commenced an action of ejectment against the adverse party, to recover the possession of the premises. After the defendant pleads (which pleading, on his part is in the nature of a declaration), the whole proceeding is but an inverted action of ejectment. The court also considers it a common-law proceeding. It partakes of none of the features which characterize a bill in chancery, and, ex concessis of the parties, is to be tried at common law by a jury, according to the principles of an ejectment suit. If this proceeding be purely a proceeding at common law, the question which arises in limine is, what is the nature of the remedy sought through its instrumentality? If it be an equitable one purely, then is its fate determined by the 56th rule of this court, which after prescribing that the practice and forms in this court shall, so far as is not provided for by the rules of this court, or by the acts of congress of the United States, conform to those prescribed by certain acts of the legislature of this state therein referred to, closes with the proviso, that nothing in either of said acts shall be so construed as to authorize the enforcement of a merely equitable right by any action or proceeding on the common-law side of this court."

This rule but reiterates a doctrine arising out of the organization of this court, under the laws and constitution of the United States. In Robinson v. Campbell, 3 Wheat. [16 U. S.] 222, it is said: "The acts of congress have distinguished between remedies at common law, and in equity. * * * The court, therefore, think, that to effectuate the purposes of the legislature, the remedies in the courts of the United States are to be at common law or in equity, not according to the practice of the state courts, but according to the principles of common law and equity, as distinguished and defined in that country from which we derive our knowledge of those principles." That case enunciates the principle that if state laws have given a legal remedy founded on an equitable title, the equity jurisdiction of the circuit court is not affected thereby. In Boyle v. Zacharie, 6 Pet. [31 U. S.] 658, we find that the chancery jurisdiction given by the constitution and laws of the United States, is the same in every state of the Union, and the rule of decision is the same in all. "And the settled doctrine of this court, is, that the remedies in equity are to be administered, not according to the state practice, but according to the practice of courts of equity in the parent country, as contra-distinguished from that of courts of law." In U. S. v. Howland, 4 Wheat. [17 U. S.] 115, it is said: "And as the courts of the Union have a chancery jurisdiction in every state, and the judiciary act confers the same chancery powers on all, and gives the same rule of decision, its jurisdiction in Massachusetts must be the same as in other states." The court, therefore, decided in that case, that the chancery jurisdiction was not affected by a law of that state which provided a peculiar process for a party. In Livingston v. Story, 9 Pet. [34 U. S.] 632, it was decided, that a federal court in Louisiana, ought to proceed in equity according to the same principles, rules, and usages as the other circuit courts administered it; and it made no difference whether there were, or were not,

courts in the state administering equity law. In Bennett v. Butterworth, 11 How. [52 U. S.] 674, carried to the supreme court from the district court, U. S., for the district of Texas, Taney, C. J., says: "Whatever may be the laws of Texas, they do not govern the proceedings and practice in the courts of the United States; and although the forms of proceedings and practice in the state courts have been adopted in the district court, yet the adoption of the state practice must not be understood as confounding the principles of law and equity, nor as authorizing legal and equitable claims to be blended together in one suit. The constitution of the United States, in creating and defining the judicial power of the general government, establishes this distinction between law and equity; and a party who claims a legal title, must proceed at law, and may undoubtedly proceed according to the forms and practice in such cases in the state courts. But if the claim is an equitable one, he must proceed according to the rules this court has prescribed, under the authority of the act of congress, 23d August, 1842 [5 Stat. 516], regulating proceedings in equity." In McFaul v. Ramsey, 20 How. [61 U. S.] 526, the court cite approvingly the immediately preceding case, and say: "In those states where the courts of the United States administer the common law, they cannot adopt these novel inventions which propose to amalgamate law and equity, by enacting a hybrid system of pleadings, unsuited to the administration of either."

The foregoing authorities enunciate the following propositions: (1) That the constitution and laws of the United States create a distinction between legal and equitable rights, and they must be administered on the common-law and equity sides of this court respectively. (2) That the distinction between the two must be preserved in every state, even where no court of chancery exists. (3) That if a legal remedy is given by a state law for an equitable right, such fact does not affect the equity jurisdiction of the federal courts.

The inference from the last proposition is, that if a legal remedy has been given by a state law for an equitable right, the equity jurisdiction of the federal courts, being unaffected by it, must be maintained. I know of no exception to the rule, unless it is to be found in some cases in which an equitable title has been declared by state statutes to be legal, and in which it has been decided that upon such titles actions of ejectment may be sustained. Such exceptions are doubtless owing to the construction placed upon the 34th section of the judiciary act [1 Stat. 92], adopting the laws of the several states as rules of decision in the courts of the United States in common-law cases.

We come now to the character and nature of the remedy sought to be enforced in this case. The right given by the legislature, on which the present proceeding rests, is the right to any one in possession of real estate to institute an action to determine any adverse claim of another to said real estate. As to the policy or propriety of that legislation, this court has nothing to say. In the courts of this state, by the practice act, one form of action is prescribed in all cases, whether common law, in equity, or in the admiralty. The courts, however, have been forced, by the very reason of the thing, to create practically those differences which the nature of things create, and which legislative theory cannot annul. In McFaul v. Ramsey, 20 How. [61 U. S.] 525, the court say: "But this attempt to abolish species, and establish a single genus, is found to be beyond the power of legislative omnipotence. They cannot compel the human mind not to distinguish between things that differ." There will be found, on examination of the decisions of our state courts, a practical illustration of the justness of the foregoing remarks of the supreme court of the United States. If a party goes into a state court, he has to enter it with one form of action, whatever be the nature of his right, or the character of the remedy he seeks. But he finds practically that the remedy he seeks is administered according to the rules of equity or common law, just in proportion as it is legal or equitable. This must necessarily be in the nature of things. In Minturn v. Hays, 2 Cal. 593, our supreme court says: "Although in this state there is no separate forum for the adjudication of chancery cases, yet in our courts having chancery jurisdiction, the rules and principles of equity practice remain unaltered." In Guy v. Hammond (January term, 1858), they decide that in chancery cases parties are not entitled to juries. They have entertained jurisdiction over bills quia timet, bills for the cancellation of deeds, bills to remove clouds upon titles, to enjoin sales, and for many other purposes. In the case of Merced Min. Co. v. Fremont, 7 Cal. 320, the section of the practice act of this state upon which the present proceeding has taken place, came under consideration. In whatever form the proceeding was presented to the court, it is evident it was considered and decided by the principles of equity jurisprudence. Speaking of their power to issue an injunction, they ask, "Is not an injunction pendente lite a remedial favorite in equity?" When, then, the state courts possessing under the same forms of pleading a mingled jurisdiction of common law and equity, are constrained by the necessity of the case to distinguish between the principles of the two systems in the administration of justice, how can this tribunal, bound by the constitution and laws of the country, confound them? It is not a formal, but a substantial difference which exists between a common-law proceeding and a proceeding in equity in this court, and they are followed by different results. If this proceeding is taken cognizance of by this tri-

bunal, it could not, bound as it is to recognize the distinction between common law and equity, permit any equitable title of defendant to be given in evidence; whereas, in the state courts, who recognize no such distinction, the equities of defendant might prevail over a legal title, as it might also, if the plaintiff had invoked the equity powers of this court.

But it is contended that the present proceeding is nothing more than an "inverted ejectment," a common-law remedy asserting a common-law right. In Surgett v. Lapice, 8 How. [49 U. S.] 65, the court, commenting upon another case, say in relation to it, "But that was not an action of title to quiet the plaintiff in possession of his land, but was a petitory action brought by the United States to recover land which was in possession of the defendant, and to which the United States claimed a legal title. The suit was in the nature of an ejectment, and in no respect analogous to a proceeding in equity to remove a cloud from the title of a party, who not only holds the legal title, but is also actually in possession of the land in dispute," &c. Now, the complaint in this case alleges the plaintiff to be seized and in possession of real estate, to which defendant claims an adverse title, which it charges to be adverse and wrongfully used by defendant to annoy and harass the plaintiff's enjoyment of said real estate, and to obstruct and prevent the free use and disposition of the same; and prays, among other things, that the defendant may be required to disclaim or produce his adverse claim, that the same may be determined. If this is not a proceeding in the nature of a bill quia timet to quiet possession, and remove a cloud from title, it is difficult to classify it.

It is also urged, that the legislature of this state has converted the right prosecuted into a cause of legal action, and therefore this court is bound so to consider it. The legislature does not touch the title or alter its character. It simply authorizes the party to litigate it. How is this to be done? By a resort to the appropriate tribunals. If his right be a legal one, by going into a common-law court; if equitable, by invoking the powers of a court of equity, if he makes an appeal to the federal court. We have seen, that this proceeding is substantially instituted for the vindication of equitable rights; that it seeks to quiet possession—to remove a cloud from title; and asks such action from this court as will dispose of defendant's title, and prevent him from using it to harass and annoy the complainant. That such proceeding is one which is for a court of equity, is manifest by the decisions of the supreme court. In Clark v. Smith, 13 Pet. [38 U. S.] 195, that tribunal administered a statute of Kentucky, very similar to that under which complainant is proceeding, in the exercise of its equitable jurisdiction. This they could not have done, had they supposed the proceeding a common-

law one, brought to enforce a mere legal title. In Wickliffe v. Owings, 17 How. [58 U. S.] 47, a similar action took place; and the court rested the right of the plaintiff to recover, upon the general principles of equity, as well as on the statute of Kentucky.

The last ground taken against the demurrer, and to prove this proceeding as perfectly proper in a court of common law, is that there existed at common law writs issued to prevent possible mischief, and known as "Brevia participantia," which are enumerated by Lord Coke; and it is contended, that this fact shows that the administration of precautionary justice was never limited to courts of equity. There is no doubt that before the limits between law and equity, and, indeed, before the modern system of equity had existed, such writs did issue. Story, in his treatise, alludes to the fact. One of these writs was that of "Ne injuste vexes;" to which, it is suggested, the procedure in this case may be assimilated. No instance is given of their present vitality; and it is matter of serious doubt, whether the old common-law writs of mesne, warrantia charta, monstraverunt, curia claudelia, and ne injuste vexes, or any other of the six writs enumerated by Judge Story, existed as part of the common law, when adopted by this state in 1850. It is clear, the authorities heretofore cited, did not recognize them as part of that law, previous to that period. Willard, in his treatise on Equity (page 328), enumerates these relics of the olden time, and says, "These remedies have been so long antiquated, that but few traces of their former existence remain. In modern times, courts of equity have administered relief in the foregoing and many other instances, and arrested the commission of anticipated injuries, by the bill quia timet." 25 Wend, 132; 5 Paige, 493. Whenever the equitable powers of this court shall be invoked in a case like the present, an inquiry into its merits will be appropriate.

The demurrer in this case must be sustained, and an order to that effect entered upon the minutes of the court.