Hare et al. v. Carnall et al.

HARE ET AL. V. CARNALL ET AL.

1.  TAX SALES:   *Deputy Sheriff: Purchaser.*
    A Deputy Sheriff, having no control of the collection of taxes, may bid
    and purchase lands at tax sale as any other person.

2.  SAME:   *Collector must attend at county site to receive taxes for the
    requisite time.*
    Before the collector of Sebastian County could make a legal sale of lands
    in the Fort Smith district for taxes, he or his deputy must have attended
    at Fort Smith for the receipt of taxes, until the twentieth day of April,
    as provided by section 5165 of Gantt's Digest.   The statute is manda-
    tory and must be observed.

3.  CHANCERY JURISDICTION:   *To avert a cloud upon title: Injunction.*
    Chancery has jurisdiction to avert, as well as to remove a cloud from
    title, and will enjoin the execution of a deed for land illegally sold for
    taxes, where it would be such *prima facie* evidence of title as would
    require evidence to remove.

4.  TAX SALES:   *Statute, section 4117 Gantt's Digest, construed.*
    The statute, Gantt's Digest, section 4117, applies only to actions for the
    recovery, or for the possession, of lands purchased at tax sale, and not
    to actions to enjoin the execution of deeds on illegal tax sales.

5.  SAME:   *Return of taxes to purchaser.*
    A purchaser of land at tax sale, who is ignorant of the irregularity of the
    sale, and pays the taxes in good faith, is entitled to a return of the taxes
    and interest (and probably the penalty) before he can be required to
    abandon his purchase; and a decree vacating the sale should so protect
    him.

6.  SAME:   *Time for redemption, how estimated.*
    The last day given for the redemption of land sold for taxes, where two
    years from the sale day are given, is the second anniversary of the sale.
    The sale day is excluded.

APPEAL from *Sebastian* Circuit Court.

Hon. J. H. ROGERS, Circuit Judge.

Hare et al. v. Carnall et al.

*Du Val & Cravens,* for appellants:

1. The suit was premature. *C. & F. R. Co. v. Parks, 32 Ark., 152.*

2. Plaintiffs did not put themselves in a position to receive any benefit from the omission of the collector to attend at Fort Smith (*Cooley on Taxation, 216*), and no injury resulted to them. They had ample opportunity to pay the taxes, but failed. They had two years to redeem (*sec. 17, act of March 5, 1875; sec. 5197 Gantt's Digest*), and "when certain number of days are required to intervene between two acts, the day of one only of the acts may be counted." (*Sec. 5648 of Gantt's Digest.*) The two years had elapsed when the application to redeem was made. *Holland v. Clark, 32 Ark., 703; Cooley on Taxation, 364.*

3. Plaintiffs failed to show that defendant's title was *prima facie* good, and there was no cloud on their title. No title vests until execution and delivery of collector's deed. (*Stephens v. Holmes, 26 Ark., 48.*) A cloud is a title or incumbrance apparently valid, but, in fact, invalid (*Bissell v. Kellogg, 60 Barb., 617–629*), and a remedy lies to remove, because it embarrasses the owner and tends to impede free disposition of land. *Lyon v. Hunt, 11 Ala., 295; Anderson v. Hooks, 9 ib., 704; Huntington v. Allen, 44 Miss., 654; 42 Ind., 44; 21 Conn., 488; Lock v. Ray, 43 Cal., 83.*

A bill which states only a pretended title, and prays relief against it on the ground of an apprehended injury, can not be maintained. *15 Ohio, 643; 22 Mich., 354; 36 Barb., 38; 44 ib., 166; 37 Penn. St., 31.*

The remedy at law was complete. *48 N. Y., 173.*

*James A. Yantis,* for appellees:

1. Sebastian County is, for many purposes, * * * two counties (*Const. 1874, p. 44, sec. 5; Acts 1874–5, pp. 86–9,*

*135–8* and *265*), especially as to revenues. "It shall be the duty, * * * and, in every particular, proceed in the collection of taxes for each district, as if said districts were *separate counties. Sec. 5, p. 137.*

2. The sale was void for the failure of the collector to attend at Fort Smith. *Sec. 5165 Gantt's Digest; 27 Ark., 678; Cooley on Tax., 212* to *221.*

The offer to redeem was in ample time. (*32 Ark., 703.*) There was no liability for the penaly. *35 Ark., 509.*

3. This suit was not premature. *32 Ark., 152,* not applicable. This was a suit to declare a sale void, and quiet title, *by the owner of the land.*

4. It was not necessary to wait until the collector's deed was made. (*9 Wis., 405.*) The certificates of purchase cast a cloud upon appellees' title. They were regular on their face ; gave purchaser at least a lien for taxes, *penalty* and *costs,* and devolve upon appellees the burden *dehors* the certificates, to rebut their validity. *41 Wis., 442; 38 ib., 477–479; 29 ib., 57–59; 26 ib., 70; 25 ib., 490; 9 ib., 405; 21 Conn., 488; 86 Ill., 550; 56 ib., 291; 43 Cal., 83; 19 Ark., 189; 3 Ohio, 87; 17 Mich., 837; 14 ib., 414; 1 John. Ch., 517; 35 Ga., 317; 42 Ind., 49; Blackwell Tax Titles, p. 556 (note a), 561, 565 (note 1); High on Injunction, 269, 270, 361; Story Eq. Jur., 700; 27 Ark., 685.*

5. No affidavit of tender was necessary. *27 Ark., 414.*

6. It was a matter of discretion with the court to allow the tender after time for redemption expired. *45 Mo., 157.*

7. Carnall offered to redeem on the tenth of June, and the refusal of the clerk could not prejudice his right. *Note to Blackwell, p. 499.*

*Compton, Battle & Compton,* also, for appellees:

1. A certificate of purchase is a cloud, and the owner

Hare et al. v. Carnall et al.

need not wait until his own title is attacked to commence suit. *9 Wis., 402; Overing v. Foote, 43 N. Y., 290; Pettit v. Shepperd, 5 Paige, 501; Fox v. Lake, 28 Wis., 583.*

2. The sale was void for the failure of the collector to attend at Fort Smith. *Gantt's Digest, sec. 5165; Parker v. Rules, Lessee, 9 Cranch, 64; Jackson v. Shepherd, 7 Cow., 88; Cooley on Tax, 326; Blackwell on Tax Titles, marg. p. 264–5,* etc.

3. The delivery to the clerk of the check, etc., on the *last day* was a *substantial redemption,* especially when followed by the *subsequent 'tender and payment into court,* and the court properly decreed the relief. *45 Mo., 157; 11 Ohio, 480; 8 Wheat., 174,* and *1 Pet., 1.*

EAKIN, J. Complainants, Carnall, and Lizzie Grimes, owners of certain lands which had been sold in 1878, for delinquent taxes of 1877, filed this bill before the time for redemption had expired. The assessment, listing and sale of the lands had been regular, save that neither the collector nor his deputy, after visiting the different townships, had attended at the county site at Fort Smith, in which district the lands lie, to receive taxes, until the twentieth day of April, as required by section 5105 of Gantt's Digest.

It is also alleged that John Hare, who purchased the lands, was the deputy collector, and, therefore incompetent to bid; but that after the purchase he had pretended that he had made the bid for defendant, Mrs. Miles, who was his sister-in-law; had caused his own name to be erased from the sales list, and her's substituted; and had procured the certificates of purchase to be issued in her name. To dispose of this point *in limine,* it suffices to say that the allegation is denied, and sustained by no sufficient evidence. Hare was Deputy Sheriff, but is not shown to have

1. TAX SALE: Deputy Sheriff may purchase.

had any control of the collections for taxes, or of the sales. He might bid as any other bystander. If he could not for himself, he could not as agent for another, and would have taken no vantage-ground by the change of names. But as the proof fails, any further consideration of the point may be pretermitted.

The sale was made on the tenth day of June, 1878. The bill was filed upon the thirtieth day of March, 1880, without any tender of taxes, apparently on the theory that the sale was void, and that they could not be required to redeem. It sought to have the sale annulled, the certificates of purchase canceled, and the clerk enjoined from executing a deed at the expiration of the time. Hare answered, denying that he was deputy collector, or that there was any fraud in changing the name of the purchaser, claiming to have acted in Mrs. Miles' name, and as her agent. She answered separately, reiterating in effect, the denials of fraud, and setting up, by way of defense, that complainants, before beginning suit, had not filed in the clerk's office an affidavit that they had tendered the amount of taxes first paid, and costs, with 100 per cent. interest, and 25 per cent. on all costs and taxes paid thereafter.

The Chancellor refused an interlocutory injunction, and, on the twenty-sixth day of June, 1880, complainants filed an amended bill, reiterating, and making more specific, the charges of fraud in the purchase by Hare, and stating, further, that the tax sale had begun at half-past 9 o'clock. Also, that on the tenth day of June, 1880, pending the suit, Carnall, for the purpose of redeeming, had applied to the Circuit Clerk to make out a certificate of the amount of taxes, penalty and costs due, which he refused. Afterwards, by subsequent amendment, they set up that on the twentieth of November, 1880, he did tender Hare the sum of $75.45 in money, the amount, as he

Hare et al. v. Carnall et al.

believes, of all taxes, penalties and costs; and offering to pay more if that be not sufficient. There were proper answers to the amendments, putting in issue all material allegations, save as to the failure of the collector or his deputy to attend at Fort Smith. This was not denied.

Upon hearing, the court held that, on account of such failure, the sale was void; ascertained the amount of taxes, penalties and costs to be, with interest at 10 per cent., $76, and ordered that complainants pay the same in five days. Upon this being done, it was ordered that the certificates of purchase be delivered up to be canceled, and that the clerk be enjoined from executing a deed. But, if not, it was ordered that the suit be dismissed; and the decree closes as follows: "And that the said defendants have, and recover of the said plaintiffs, all their costs in this behalf laid out and expended." There is no other determination as to the costs, and although, in one view, the expression may seem confined to the alternative of dismissal because of failure to pay in the money, we, upon the whole decree, construe it to be intended as an adjudication of the whole matter, and to impose the costs, in any case, upon the complainants. The defendants appeal.

By section 5165 of Gantt's Digest, the collector, after attending the several townships, upon appointed days, to receive taxes, was required, thereafter, to "attend at his office at the county seat, until the twentieth day of April, in each year, to receive taxes from persons wishing to pay the same."

2. SAME: Collector must attend at county site to receive taxes, for requisite time.

This provision was evidently intended for the benefit of taxpayers. This is plain from its nature and expressions. All the authorities, everywhere, are uniform in holding that all such provisions are mandatory, and the observance of them is a condition precedent to any valid sale of lands for taxes.

Neither the Sheriff nor his deputy so attended at Fort Smith, but did, as it seems, at Greenwood. By the Constitution the county of Sebastian is anomalous. It may have two districts and two county seats, at which County, Probate and Circuit Courts shall be held, as may be provided by law, each district paying its own expenses. (Article 13, section 5.) This was to meet a condition of things existing at the time, the county having, previously been divided, for many purposes, into two districts. By section 4 of an act of February 3, 1875, Greenwood and Fort Smith were designated as the places for holding the courts of their respective districts.

3. CHANCE-
RY JURIS-
DICTION:
To avert a
cloud from
title.

By section 5 of the act, the treasurer of the county was required to keep his accounts for the two districts separate; the assessor was required to make separate assessments of property, in separate books; and the collector was required " to collect and keep separate the taxes stated upon the tax-books for each of said districts, and, in every particular, proceed in the collection of taxes for each of said districts, as if said districts were separate counties." In other words, Fort Smith was made the county site for so much of Sebastian County as lay within that district, and the collector should have attended there. The sale was unauthorized, and such as a court of chancery might, upon proper application, and equitable terms, amend. If a deed upon it were executed, it would give such *prima facie* evidence of title in the purchaser, as would require evidence to remove; and the jurisdiction to avert a cloud, when there is no other remedy, is a corollary of the conceded power to remove it.

4.   TAX
SALES:
Statute
(sec.    4117
Gantt's Di-
gest)   con-
strued.

This case does not come within the purview of section 2 of act of January 10, 1857. (See *section 7 of chapter 106, of Gould's Digest.*) The effect of that section is, that before any suit for the recovery or possession of lands held by

virtue of a purchase at tax sale, and in some other cases, the claimant shall file, in the office of the clerk of the proper court, an affidavit to the effect that he had tendered the full amount of all taxes and costs paid on account of said lands, with interest on the same at the rate of one hundred per cent. upon the amount first paid for said lands, and twenty-five per cent. upon all taxes and costs paid thereafter, etc. This is neither an action for the recovery nor possession of land. The provisions of the law are severe, and will not be extended beyond the letter. See *Chaplin v. Holmes, 27 Ark., 414.*

The original bill did not show a complete equity, however, inasmuch as it did not show that the complainants had done all on their part which equity required. The taxes were a lien upon the lands in favor of the State, which had been discharged by the purchaser. He had bought at a sale properly advertised, and can not be put in the position of an officious intermeddler. He had paid *the taxes* in good faith, and, as to so much, was certainly entitled to remuneration before he could be required to abandon his purchase. Whether or not he might be entitled to the penalty also, might be seriously questioned, but that is not necessary now. By the subsequent tenders of the complainants, he was made whole as to all.

5. SAME: Return of taxes to purchaser.

Besides, the offer to redeem was made to the clerk in time. It was on the second anniversary of the sale, and within two years, counting the days of the sale, and of the offer, one inclusive and the other exclusive.

The complainants were not wholly blameless. They should at least have offered to remunerate defendants for the taxes, with interest, if not for penalties and costs of sale, before vexing them with a suit. But they have, pending the suit, done fully all that could have been required, and, as we understand the same, have been decreed to pay

all costs.    They do not appeal, and the defendants below should be satisfied to come harmless out of a purchase which gave them no title, nor claim to the land.    The ambiguity of the decree with regard to cost, might have been corrected at the time, if the attention of the Chancellor had been called to it, and there was no necessity for an appeal.    Substantial justice has been done in the matter.
Affirmed.