## LAMB *v.* FARRELL.

### (*Circuit Court, E. D. Arkansas.* April Term, 1884.)

1. REMOVAL OF CLOUDS FROM TITLE—RULE IN ARKANSAS.

   It is the established doctrine of the supreme court of Arkansas that a court of equity has jurisdiction of a suit to remove a cloud from title to land when the claim or lien which constitutes the cloud purports on its face to be valid, and the defect in it can be made to appear only by extrinsic evidence, and there is no adequate remedy at law. In the application of this rule, that court holds the jurisdiction exists when the plaintiff is the holder of the legal title and in possession, or the land is unoccupied; and that when the plaintiff's title is equitable, or a junior legal title with prior or superior equities, the jurisdiction exists without regard to the question of possession.

2. STATE DECISIONS—FEDERAL COURTS FOLLOW, WHEN.

   Where the decisions of the supreme court of a state on the subject of titles to land, or the mode of acquiring or quieting titles thereto, are settled and uniform, they are accepted by the federal courts as conclusive evidence of the law of the state on that subject, and have a binding force as nearly equivalent to a positive statute as judicial decisions can have.

3. SAME—STATE STATUTES AND STATE DECISIONS.

   State statutes relating to the removal of clouds from title to land are obligatory upon the federal courts, and a uniform and stable body of judicial decisions on that subject, from the court of last resort of the state, is equally obligatory.

4. WHEN EQUITY HAS JURISDICTION TO REMOVE CLOUD.

   "Whenever a deed or other instrument exists which may be vexatiously or injuriously used against a party after the evidence to impeach or invalidate it is lost, or which may throw a cloud or suspicion over his title or interests, and he cannot immediately protect or maintain his rights by any course of proceeding at law, a court of equity will afford relief by directing the instrument to be delivered up and canceled, or by making any other decree which justice and the rights of the parties may require."

5. SAME—STATUTE NOT NECESSARY.

   It is highly probable some of the statutes assuming to confer on courts of equity jurisdiction to remove clouds from title had their origin in a misconception of the inherent jurisdiction of such courts. They do not confer a more extensive remedy than exists by virtue of the customary jurisdiction of chancery courts. They may regulate the mode of proceeding and form of decree, but they are not necessary to the exercise of the jurisdiction.

6. ORTON v. SMITH, 18 How. 263.

   The case of *Orton* v. *Smith*, 18 How. 263, examined, and shown not to decide anything contrary to the principles here announced.

7. TAX DEED—ITS VALUE AS EVIDENCE.

   In Arkansas a tax deed is *prima facie* evidence of the regularity of the tax proceedings leading up to the deed. The act declaring the deed should be conclusive evidence of the regularity of the previous proceedings, was held to be unconstitutional by the supreme court of the state.

8. WARRANT TO COLLECT TAX—ASSESSOR'S OATH.

   The failure of the assessor to authenticate the assessment roll by his oath, as required by law, and the fact that no warrant for the collection of the tax was issued to the collector by the clerk, as required by law, are irregularities that vitiate the tax sale and deed.

9. RIGHTS OF PURCHASER AT A VOID TAX SALE.

   In Arkansas the purchaser of land at a void tax sale may recover the taxes, interest, penalty, and costs of advertising charged on the land at the time of sale, and all subsequent taxes paid by him, with interest, and the statute creates a lien on the land in his favor for these amounts.

In Equity.

*John M. Moore,* for plaintiff.

*Clark & Williams,* for defendant.

CALDWELL, J. This is a suit in equity to remove a cloud from the plaintiff's title to the real estate described in the bill. The bill alleges that the plaintiff is the owner in fee-simple of the land; sets forth how he acquired it, and exhibits his muniments of title; alleges that the land is unoccupied; that the defendant claims title by virtue of a deed from the state land commissioner, which invests him with the apparent legal title, but that, in fact, said deed conveyed no title, the state having none to convey; that the only pretense of claim the state had to the land was that it was struck off to the state at the sale of delinquent lands for the taxes of 1876 in the county of Saline, and that, at the expiration of the time allowed by law for the redemption of lands sold for taxes, the clerk of said county executed a deed to the state; that the said tax sale, and the deed made to the state in pursuance thereof, are void, because the assessor of said county, for the year 1876, did not, at the time he returned his assessment to the clerk, nor at any time, take and subscribe the oath required by section 5112, Gantt, Dig.; and because the clerk of the county, at the time he made out and delivered the tax-book of the county, for said year, to the collector, did not attach thereto "under his hand and the seal of his office," his warrant authorizing said collector to collect such taxes as required by section 5139, Gantt, Dig., and that no warrant was issued to the collector at any time, or in any form, authorizing him to collect the taxes of that year. The bill contains the usual allegations as to the injurious effects of this cloud upon the plaintiff's title, and an appropriate prayer for relief. The proof supports the allegations of the bill, leaving only questions of law to be determined.

The first contention of the defendant is that courts of equity have no jurisdiction to entertain a bill to remove a cloud from title at the suit of the holder of the legal title, unless he is in actual possession of the land. It is the established doctrine of the supreme court of this state that a court of equity has jurisdiction of a suit to remove a cloud from title to land when the claim or lien which constitutes the cloud purports *on its face to be valid,* and the defect in it can be made to appear only by extrinsic evidence, and there is no adequate remedy at law.

In the application of the principle thus generally stated, that court holds the jurisdiction exists when the plaintiff is the holder of the legal title and in the possession of the land, or the land is unoccupied, and that when the plaintiff's title is equitable, or a junior legal title with prior and superior equities, the jurisdiction exists without regard to the question of occupation or possession. *Mitchell* v. *Etter,* 22 Ark. 178; *Apperson* v. *Ford,* 23 Ark. 746; *Branch* v. *Mitchell,* 24 Ark. 431; *Byers* v. *Danley,* 27 Ark. 77, 96; *Miller* v. *Neiman,* Id. 233; *Chaplin* v. *Holmes,* Id. 414; *Sale* v. *McLean,* 29

Ark. 612; *Terry* v. *Rosell*, 32 Ark. 478, 490; *Hare* v. *Carnall*, 39 Ark. 196, 202; *Lawrence* v. *Zimpleman*, 37 Ark. 643. Expressions may be found in some of these cases which, taken alone, might indicate the jurisdiction was not quite so extended. But the utterances of every court must be read in the light of the facts of the case which it is deciding.

In *Apperson* v. *Ford, supra*, a single judge expressed the opinion "that the jurisdiction is exercised to strengthen and protect the title that is connected with actual possession," but a majority of the court did not concur in this view; and in the later case of *Branch* v. *Mitchell, supra*, the court, upon full consideration of the question, held that "where one holding the equitable title only to lands, or a junior legal title with prior or superior equities, comes into a court of equity to impeach and cancel, or compel a conveyance, of the senior or better *legal* title, the jurisdiction of the court in nowise depends on the question of possession." The reasoning of the court in support of this proposition would seem to be unanswerable: "Whether one holding a junior or inferior legal title with prior or superior equities be in or out of possession, it is difficult to conceive on what grounds his right to the aid of a court of equity can be denied. If *in* possession, he may be ousted by an ejectment; if *out*, he cannot obtain possession when confronted by the only or the older and better legal title. If *in* possession, he cannot bring ejectment; *out*, he cannot maintain it."

Notwithstanding the language of the learned judge who delivered the opinion of the court in *Apperson* v. *Ford*, that this jurisdiction is exercised "to protect the title that is connected with actual possession," it is obvious he did not mean to assert that possession was essential to the jurisdiction in every case, because later on in the opinion he concedes the jurisdiction where neither party is in possession. He says, (p. 762:)

"Taking neither party in *Mitchell* v. *Etter* to have been in possession, then Mitchell and wife were without remedy at law, and without any means to test the opposing title of the defendants, but by complaining of it in chancery, as a cloud upon their title, and that fact alone would give jurisdiction. *Mattingly's Heirs* v. *Corbit*, 7 B. Mon. 376."

And this doctrine has been uniformly maintained by the court.

In *Shell* v. *Martin*, 19 Ark. 139, a bill was sustained by the holder of the legal title out of possession against a defendant in possession claiming under an alleged legal title. On these facts, it is obvious the plaintiff had an adequate remedy at law; and, upon that ground, *Shell* v. *Martin* has been overruled by the later cases.

The state, as well as the owners, has an interest that the title to lands within her borders should be quieted. Doubtful or clouded titles prevent the sale, lessen the value, and retard the occupation and improvement of lands; and the additional public revenue which would be derived from their improvement and enhanced value is lost.

It has been the settled policy of this state to render titles secure, and to afford ample means of settling all disputes in relation to them. This policy finds expression in statutes of limitations, betterment acts, and acts curing defective acknowledgments; and in the judgments of the supreme court, expounding the jurisdiction of courts of equity to quiet titles, and to avert and remove clouds from titles. No statute has been passed in this state relating to the jurisdiction or practice of equity courts in cases like the one at bar, because the supreme court has steadily maintained that the jurisdiction was inherent, and the rules of practice adequate, without the aid of legislation. The federal courts have given effect to such statutes in other states. *Clark* v. *Smith,* 13 Pet. 195; *Stark* v. *Starrs,* 6 Wall. 402; *Holland* v. *Challen,* 110 U. S. 15; S. C. 3 Sup. Ct. Rep. 495.

The defendant insists that a court of equity has no inherent jurisdiction to remove clouds from title when the land is unoccupied. It is said such jurisdiction might be conferred by statute. It is conceded the federal court would give effect to such a statute, but it is denied that the settled rulings of the supreme court of a state maintaining the jurisdiction are equivalent to a statute conferring it, or that they are controlling in this court. Where the decisions of the supreme court of a state on the subject of titles to land, or the mode of acquiring or quieting titles thereto, are settled and uniform, they are accepted by the federal courts as conclusive evidence of the law of the state on that subject, and have a binding force as nearly equivalent to a positive statute as judicial decisions can have.

In a suit involving title to land, where the supreme court of the state had adopted a rule of decision applicable to the case, the supreme court of the United States said:

"In accordance with well-established principles in this court, we accept this uniform and stable body of judicial decision from the court of last resort of the state in which the property is situated, and in which the transactions that form the subject of this litigation took place, as conclusive testimony of the rule of action prescribed by the authorities of the state, as applicable to their interpretation and adjustment. We do not inquire whether a more suitable rule might not have been adopted, nor whether the arguments which led to its adoption were forcible or just. We receive the decision, having the character that are mentioned in the extract we have made from the opinion of the supreme court of Texas, as having a binding force almost equivalent to positive law." *League* v. *Egery,* 24 How. 264; *Christy* v. *Pridgeon,* 4 Wall. 196, 204; *Beauregard* v. *City of New Orleans,* 18 How 497

In *Clark* v. *Smith, supra,* the court say:

"Propriety and convenience suggest that the practice should not materially differ where the titles to land are the subject of investigation; and such is the constant course of the federal courts."

And in the same case it is said the federal courts in chancery will give effect to state legislation and state policy whenever it can be done without departing from what legitimately belongs to a court of chancery. But I do not rest the case on this ground alone. The

decisions of the supreme court of this state on this question are right in principle.

The action at law for the recovery of real property retains its possessory feature in this state and can only be brought against the person in possession. *Ozark Land Co.* v. *Leonard,* 20 Fed. Rep. 881.

All the authorities agree that equity has jurisdiction of a suit to quiet the title, or remove a cloud from the title, of one in actual possession, whether his title be legal or equitable; and the courts are all agreed as to the ground of this jurisdiction. It attaches because the remedy at law is inadequate. The law will lend its aid to those holding the legal title, and out of possession, to assail those who are in possession. But it will not aid one in possession, whether his title be legal or equitable; nor will it aid him, though out of possession, if his title be equitable, or the land unoccupied. Where the plaintiff is in possession, recourse is had to equity, not because there is some mysterious virtue in the fact of possession of property that clothes the possessor with the special privilege of having the controversies in relation thereto tried in equity, but because he has no means of procuring the controversy to be tried at law. If a statute should be passed authorizing one in possession of land to bring a suit at law, against any one claiming it, to settle the title, "the jurisdiction in equity, if it did not cease as unwarranted, would, at least, become inoperative and obsolete." *Ex parte Boyd,* 105 U. S. 647, 657. The possession would be in the plaintiff as before, but the essential element to give equity jurisdiction—the want of a remedy at law—would no longer exist.

In the case of unoccupied land, the law refuses its aid to any party for any purpose. It will not adjudicate the title or right of possession, nor will it remove a cloud. Whether one's title be legal or equitable, he is equally denied relief or redress at law, when the land is unoccupied. The want of an adequate remedy at law is as absolute as it is when the plaintiff has the actual possession. A large proportion of the valuable lands of this county are unoccupied. In some instances lands having great value for some purposes are not even susceptible of occupation. Owners and purchasers are not indifferent about the title to such lands. A cloud upon the title to unoccupied land is not less injurious to the owner than it would be if he was in possession; and the ground of his equity to have his title quieted and clouds removed is precisely that upon which jurisdiction is assumed and relief granted to owners in possession of their lands, viz., the law's inability to afford him a remedy.

Equity courts had their origin in the blind and obstinate refusal of the early common-law courts to expound their rules of decision and mould their forms of procedure to meet the growing exigencies of society, and the obvious demands of justice. Courts of equity in this country should not imitate the bad example of the common-law courts, and decline jurisdiction in suits falling clearly within the ac-

knowledged and fundamental principle upon which equity jurisdiction is founded, because there seems to have been no case calling for its exercise under a system of tenures, a rule of seizin, and forms of procedure now obsolete in the country of their creation, and which never had any place in the laws of this country. The jurisdiction and practice in the equity courts of the United States has a general correspondence with that of the chancery courts of England. But chancery jurisdiction and practice, like the common law, is subject to be modified by local circumstances, or local convenience and necessity. The altered condition of society and government demands corresponding changes in our jurisprudence. Law, like everything else, is subject to the law of evolution. The conservatism of courts is a guaranty that the process will not go forward more rapidly than experience and the plainest principles of right and justice imperatively demand.

In answer to the argument that the subject-matter of a proceeding at law in a federal court, founded on a state statute, was originally exclusively cognizable in equity, and therefore could not be changed into a proceeding at law, the supreme court of the United States, speaking by Mr. Justice MATTHEWS, said:

"And the remaining question, therefore, becomes, not so much whether congress may, by appropriate legislation, transmute an equitable into a legal procedure, as whether it can in anywise change the rules of pleading and procedure as to courts, either of law or equity, in force in England at the time of the adoption of the constitution, or whether, by the adoption of that instrument, all progress in the modes of enforcing rights, both at law and in equity, was arrested and their forms forever fixed. To state the question is to answer it." *Ex parte Boyd*, 105 U. S. 647, 656.

And see, to same effect, *Ellis* v. *Davis*, 109 U. S. 485, 497; S. C. 3 Sup. Ct. Rep. 327.

But the case at bar falls plainly within the first and most ancient principle of equity jurisdiction. No extension or expansion of that jurisdiction is necessary to uphold it.

In *Holland* v. *Challen*, 110 U. S. 15, S. C. 3 Sup. Ct. Rep. 495, Mr. Justice FIELD, speaking for the whole court, said:

"The truth is that the jurisdiction to relieve the holders of real property from vexatious claims to it, casting a cloud upon their title, and thus disturbing them in its peaceable use and enjoyment, is inherent in a court of equity. * * *"

It is true, that case was founded on a statute of Nebraska, but the reasoning of the court in support of the jurisdiction under the statute, supports it equally independently of the statute. The court say:

"The property in this case, to quiet the title to which the present suit is brought, is described in the bill as unoccupied, wild, and uncultivated land. Few persons would be willing to take possession of such land, inclose, cultivate, and improve it, in the face of a disputed claim to its ownership. The cost of such improvements would probably exceed the value of the property. An action for ejectment for it would not lie, as it has no occupant; and if, as contended by the defendant, no relief can be had in equity because the party

claiming ownership is not in possession, the land must continue in its unimproved condition. It is manifestly for the interest of the community that conflicting claims to property thus situated should be settled, so that it may be subjected to use and improvement. To meet cases of this character, statutes like the one of Nebraska have been passed by several states, and they accomplish a most useful purpose. And there is no good reason why the right to relief against an admitted obstruction to the cultivation, use, and improvement of lands thus situated in the states should not be enforced by the federal courts, when the controversy to which it may give rise is between citizens of different states. * * * There can be no controversy at law respecting the title to or right of possession of real property when neither of the parties is in possession. * * * Undoubtedly, as a foundation for the relief sought, the plaintiff must show that he has a legal title to the premises, and generally that title will be exhibited by conveyances or instruments of record, the construction and effect of which will properly rest with the court. * * * But should proofs of a different character be produced, the controversy would still be one upon which a court of law could not act. It is not an objection to the jurisdiction of equity that legal questions are presented for consideration which might also arise in a court of law. If the controversy be one in which a court of equity only can afford the relief prayed for, its jurisdiction is unaffected by the character of the questions involved."

The principle is said to be somewhat analogous to the jurisdiction entertained by courts of equity to compel a person having a *prima facie* right of action to put it in suit in a reasonable time, and in default to protect the party liable from being molested at law. Spence, Eq. Jur. [659,] note 9.

"The jurisdiction of a court of equity to set aside deeds and other legal instruments which are a cloud upon the title of real estate, and to order them to be delivered up and canceled, appears to be now fully established." Willard, Eq. Jur. 304.

A terse and comprehensive statement of the principle upon which the jurisdiction is founded, is contained in *Marsh* v. *City of Brooklyn*, 59 N. Y. 280. Judge FOLGER, delivering the opinion of the court, said:

"When the claim or lien purports to affect real estate, and appears on its face to be valid, when the defect in it can be made to appear only by extrinsic evidence, which will not necessarily appear in a proceeding by the claimant thereof to enforce the lien, there is a case presented for invoking the aid of a court of equity, and to remove the lien which is a cloud upon the title."

Mr. Pomeroy, in his valuable treatise on Equity Jurisprudence, lays it down that courts of equity have jurisdiction to remove clouds from title where the title to be protected is equitable in its nature, or where the title is legal and the remedy at law is inadequate, (section 1399;) and in a note to this section the learned author shows the statement of the text is supported by the general, though not quite uniform, doctrine of the authorities in this country. On the precise question in the case at bar he says:

"Where, on the other hand, a party out of possession has an equitable title, or where he holds the legal title under circumstances, that the law cannot

furnish him full and complete relief, his resort to equity to have a cloud removed ought not to be questioned."

The principle on which the jurisdiction is founded, and the rule for its exercise, are admirably stated in *Martin* v. *Graves*, 5 Allen, 601, where the court say :

"Whenever a deed or other instrument exists which may be vexatiously or injuriously used against a party after the evidence to impeach or invalidate it is lost, or which may throw a cloud or suspicion over his title or interests, and he cannot immediately protect or maintain his right by any course of proceeding at law, a court of equity will afford relief by directing the instruments to be delivered up and canceled, or by making any other decree which justice and the rights of the parties may require."

In *Clouston* v. *Shearer*, 99 Mass. 209, it is said :

"This is a broad and comprehensive statement of the principles on which such relief is granted."

And the latter case is cited approvingly in *Sullivan* v. *Finnegan*, 101 Mass. 447, and the rule applied where the plaintiff and defendant were occupying different rooms in the same house, each claiming to own the whole; and see *Loring* v. *Downer*, 1 McAll. 360; *Bunce* v. *Gallagher*, 5 Blatchf. 481; S. C. 7 Amer. Law Reg. (N. S.) 35; *Young* v. *Porter*, 3 Woods, 342; *Carroll* v. *Safford*, 441, 464.

Some of the confusion and apparent conflict in the authorities grows out of the varying provisions of state statutes. Decisions based on statutes are cited as though they were an exposition of the general principles of equity jurisdiction. It is highly probable some of these statutes had their origin in a misconception of the inherent jurisdiction and powers of courts of equity. The tendency of the courts at first was to accept these statutes as the measure of equity jurisdiction in this class of cases.

The case of *Pier* v. *City of Fond du Lac*, 38 Wis. 470, is instructive on this point. That was a suit in equity to remove a cloud cast upon the plaintiff's title by a certificate of assessment. The bill alleged the plaintiff was the owner in fee of the lot, but said nothing about the possession. The bill being silent on the question of possession, the court assumed, for the purposes of the case, that the lot was unoccupied. It was contended for the defendant that the action could only be sustained under the statute, which is as follows :

"Any person having the possession and legal title to land may institute an action against any other person setting up a claim thereto, and if the plaintiff shall be able to substantiate his title to such land, the defendant shall be adjudged to release to the plaintiff all claim thereto, and to pay costs, unless," etc.    Rev. St. 1849, § 34, c. 84; Rev. St. 1858, § 29, c. 141.

It was conceded that if the suit could not be maintained independently of the statute, the plaintiff's want of possession was fatal to his case; and the court said :

"Hence we must determine whether the action can be upheld independently of the statute. Courts of equity have inherent jurisdiction of actions to prevent or remove clouds on title to land, and have constantly exercised it

from a very early period. * * * In those actions *quia timet* which may be brought independently of the statute, we find no authority for holding that possession by the plaintiff is essential to the cause of action; and unless an averment of such possession is necessary to show that the plaintiff has no adequate remedy at law, no valid reason is perceived why it should be required. True, it is said in the opinion of Chief Justice DIXON, in *Lee* v. *Simpson, supra,* [29 Wis. 333,] that 'it is only the person having the possession and legal title to land who may institute his suit *quia timet* in equity against any other person setting up a claim of title thereto,' (page 337;) but the learned chief justice is there speaking of an action under the statute, and his remarks have no application to those actions *quia timet* which may be brought independently of the statute." And see *Clouston* v. *Shearer,* 99 Mass. 209.

And the court held that the statute could not be construed as taking away or restricting the inherent jurisdiction of courts of equity to remove clouds upon the title of unoccupied land.

It is apparent, therefore, that this and other like statutes do not confer a more extensive remedy than exists by virtue of the customary jurisdiction of the chancery courts. They may regulate the mode of proceeding and form of decree, but they are not necessary to the exercise of the jurisdiction.

A short sentence in the opinion of the court in the case of *Orton* v. *Smith,* 18 How. 263, is cited as supporting the proposition that equity has no jurisdiction to remove a cloud from title except at the suit of one who holds the legal and equitable title and has the possession. The case is cited in support of this proposition by counsel, and in the late case of *Patrick* v. *Isenhart,* 20 FED. REP. 339, and other cases. This is a total misconception of what was before the court in that case for decision, and what was actually decided. At the threshold of the opinion the court say: "The bill in this case is in the nature of a bill of peace, as authorized by the statute of Wisconsin." The statute is not given, but it is the same that came under discussion in the case of *Pier* v. *Fond du Lac, supra.* *Orton* v. *Smith* was decided in 1855, and *Pier* v. *Fond du Lac* in 1875, but the same statute was in force at both periods. It will be observed that in proceeding under that statute the plaintiff must have both "the possession and the legal title." It does not appear who, if any one, was in possession of the land, but as it is said the suit was founded on the statute, it is highly probable the plaintiff was. However this may be, it is obvious that the question of possession, as affecting the jurisdiction of the court under the statute, or independently of it, was not raised or considered. Orton, the defendant in the suit below, had in good faith paid $2,100 for a title bond to the land executed by Knab, who held the legal title. One Hubbard claimed a secret equity in the land, of which Orton had no knowledge. On the twenty-sixth of August, 1851, Orton filed his bill in chancery, in the state court, against Knab, demanding from him a conveyance of the legal title according to the exigency of his bond. During the pendency of this bill, Smith purchased, for a nominal consideration, the

real or supposed secret equity of Hubbard, and also obtained from Knab, for a like consideration, a transfer of the legal title, and thereupon filed his bill against Orton in the federal court, under the Wisconsin statute, to quiet his title. While Smith was the holder of the legal and equitable title to the land, he had acquired this title for a mere nominal consideration, while Orton's suit against Knab in the state court, for specific performance of the covenants to the latter's bond, was pending. Having reference to these facts, and touching a title so acquired, the court said:

"Those only who have a clear, legal, and equitable title to land connected with possession, have any right to claim the interference of a court of equity to give them peace, or dissipate a cloud on the title. The complainant in this case is the volunteer purchaser of a litigious claim; he is the assignee of a secret equity for apparently a mere nominal consideration, and of the bare legal title for a like consideration. This legal title was improperly assigned to him, during the pendency of a suit in chancery to ascertain the person justly entitled to it."

The manifest sense of the opinion, when read in the light of these facts, is that there was such a want of consideration, conscience, and good faith in the acquisition of Smith's title, that a court of equity would not lend him its aid against a *bona fide* purchaser for value of an equitable title. The question of possession was not mooted. The word occurs but once in the opinion, and then casually. There was no fact or issue in the case making it necessary or proper to decide whether the jurisdiction in equity, independently of any statute, to remove a cloud from title is restricted to those only who have a clear, legal, and equitable title, and actual possession of the land. This is made clear by the fact that the court, in enumerating the defects and weaknesses in the plaintiff's case, does not mention want of possession as one of them. On the facts of the case the court refused to treat the plaintiff as the *bona fide* owner of the legal or equitable title. The court say he acquired his title without any valuable consideration, and that the "legal title was improperly assigned to him during the pendency of a suit in chancery to ascertain the person justly entitled to it." These findings were fatal to the plaintiff's case. It was upon these grounds, and the further ground that a court of the United States should not entertain a bill of peace upon a title already in litigation in a state court, that the case was decided and the bill dismissed.

What is said by the court in *Branch* v. *Mitchell, supra,* is appropriate here:

"The language of the court is always to be understood by applying it to the facts of the case decided. That which seems to be general and of universal application, has, in reality, often a limited application; and so the words of truth and the utterances of the law, undeniable in the case wherein they are spoken, become the parents of error and false doctrine."

It is next objected that section 5206 of Gantt's Digest declares that tax deeds shall be "conclusive evidence" of the regularity of every-

thing required to be done by law to make a valid tax sale; and that it is not, therefore, open to the plaintiff to prove the irregularities relied on to invalidate the sale. But the supreme court of the state has held that provision of the statute unconstitutional, and decided that the deed is only *prima facie* evidence that the necessary steps were taken to make a valid sale. *Cairo & F. R. Co.* v. *Parks,* 32 Ark. 131; *Hickman* v. *Kempner,* 35 Ark. 505. The fact that no warrant was issued to the collector authorizing him to collect the taxes, as required by section 5139, is fatal to the tax title. Cooley, Tax'n, 292, and cases cited. The failure of the assessor to authenticate his assessment roll by the oath required by section 5112, is also fatal to the validity of the tax sale. Cooley, Tax'n, 289, and cases cited; Burroughs, Tax'n, 232, 249, 250. Irregularities less serious than either of these have been held to avoid tax sales in this state. *Hickman* v. *Kempner, supra; Hare* v. *Carnall,* 39 Ark. 196; *Crane* v. *Randolph,* 30 Ark. 579; *Pack* v. *Crawford,* 29 Ark. 489; *Vernon* v. *Nelson,* 33 Ark. 748.

It is objected that the plaintiff did not tender to the defendant the taxes paid by him, with penalties, etc., and make affidavit of that fact, as required by section 2267 of Gantt's Digest, before bringing his suit. That section has no application to suits like the one at bar. *Chaplin* v. *Holmes, supra; Hare* v. *Carnall,* 39 Ark. 196, 203.

The provisions of section 5214 of Gantt's Digest are applicable to this case, and the defendant is entitled to recover in this suit the taxes, interest, penalty, and costs of advertising charged on the land at the time of the sale, and all subsequent taxes paid by her, with interest, and to have a lien decreed on the land for the same. *Hunt* v. *Curry,* 37 Ark. 100.

As to the equities of a purchaser at a tax sale, independently of the statute, see *Hickman* v. *Kempner,* 35 Ark. 505, 510; *Hare* v. *Carnall,* 39 Ark. 196, 203; *Ware* v. *Woodall,* 40 Ark. 42; *Chaffe* v. *Oliver,* 39 Ark. 531.