[L. A. No. 901.   Department One.—October 22, 1902.]

HENRY MILLER, Surviving Partner of Firm of Miller & Lux, Appellant, v. COUNTY OF KERN, Respondent.

TAXATION—ROAD-TAX OUTSIDE OF MUNICIPALITIES—ACT OF 1883—REPEAL.—The act of 1883 (Stats. 1883, pp. 5-20), reconstructing sections 2618-2744 of the Political Code, relating to highways, and providing for a road-tax outside of municipalities, was not repealed by the County Government Act of 1895.

ID.—CONSTITUTIONAL LAW—EXEMPTION OF MUNICIPALITIES—SEPARATE DISTRICTS.—The act of 1883 is not unconstitutional on the ground

.that it in effect exempts municipalities from taxation for county road purposes. Municipalities are exempted from an outside road-tax merely because they are made separate districts, and are required to maintain their own streets and alleys.

ID.—CORRECTED ASSESSMENT-ROLL—AFFIDAVITS ESSENTIAL TO VALIDITY. —The affidavit to the corrected assessment-roll required to be made by the clerk of the board of equalization, and the affidavit of the auditor required to be made before such roll is delivered to the tax collector, are essential to the validity of the assessment-book, and without such affidavits the tax-collector has no right to enforce the assessment.

ID.—NOTICE BY TAX-COLLECTOR.—The notice by the tax-collector required by section 3746 of the Political Code, as to the time when the tax will be due and payable, though desirable, is not essential to the validity of the assessment.

ID.—ASSESSMENT OF ALFALFA—EXEMPTION OF GROWING CROPS—IM-PROVEMENTS ON LAND.—Alfalfa being a perennial plant which pro-duces annual crops of hay or pasturage for an indefinite number of years, is part of the realty. It is not included in the exemption of "growing crops"; neither is it included under the head of "improvements on land," as defined by section 3617 of the Political Code, and it cannot be properly assessed as such by the assessor.

APPEAL from a judgment of the Superior Court of Kern County. J. W. Mahon, Judge.

The facts are stated in the opinion.

Isaac Frohman, and Frohman & Jacobs, for Appellant.

J. W. Ahern, District Attorney, J. E. Patten, and Alvin Fay, for Respondent.

CHIPMAN, C.—This action was brought under section 3819 of the Political Code, to recover $21,668.92, paid under protest by plaintiff, as surviving partner of Miller & Lux, for state and county taxes on real and personal property of said Miller & Lux for the fiscal year ending June 30, 1896. A general demurrer to the complaint was sustained, and plaintiff declin-ing to amend, judgment passed for defendant, from which plaintiff appeals. Respondent has filed no brief. There are five separate counts in the complaint. In each protest and each count it is claimed that the whole tax is void upon grounds common to each, and in some of the protests the taxes are claimed to be void on special grounds.

1. The board of supervisors levied a rate of $1.85 on each one hundred dollars in value of real and personal property in Kern County without the limits of incorporated cities and towns in the county, and a rate of $1.58 on such property within the limits of such cities and towns. All the property of Miller & Lux so taxed was outside of any incorporated city or town, and was taxed at the higher rate. It is contended that this was unauthorized. The difference between the two rates is twenty-seven cents, and is made up by the levy on property without the limits mentioned, as follows: bridge fund, two cents; road fund, twenty-five cents; and presumably was levied pursuant to section 2 of the act of 1883 (Stats. 1883, pp. 5-20). It is claimed that the provisions of this act were repealed by the County Government Act of 1893, which took effect January, 1895, before the levy complained of was made (Stats. 1893, pp. 346-513); and that, if not repealed, it is in violation of section 1 of article XIII, and also subdivisions 10 and 20 of section 25 of article IV of the constitution; subdivision 13 of section 25 (p. 353) of the act of 1893; also subdivision 42½ of said section (p. 360), and section 236 (p. 513), which latter section repeals all inconsistent acts, are referred to. The act of 1883 was a reconstruction of chapter II of title VI of part III of the Political Code (secs. 2618-2744), relating to highways. Sections 2651-2655 of the Political Code provide for levying the road poll-tax and the property road-tax. Section 2 of the act of 1883 reads: "Provided further, that nothing herein contained shall be deemed to authorize the levy or collection of a road poll-tax, or property road-tax, within municipalities existing under the laws of this State, wherein work and improvements upon the streets is done by virtue of any law relating to street-work and improvements within such municipality. Nor shall any such incorporated city or towns be, by the supervisors of the county, included or embraced in any road district by them established under the act." Section 2641 of the Political Code, as reconstructed by said act, requires the board of supervisors of the several counties to "divide their respective counties into suitable road districts." Section 2654 provides: "The annual property tax for road purposes must be levied by the board of supervisors at their session when the tax is by them levied

for county purposes. This property road-tax, when levied, must be annually assessed and collected by the same officers and in the same manner as other state and county taxes are levied, assessed, and collected, and turned over to the county treasurer for the use of the road districts from which it is respectively collected." Subdivision 13 of section 25 of the County Government Act, referred to above, gives to the boards of supervisors the power—"13. To levy taxes upon the taxable property of their respective counties for all county purposes, and also upon the taxable property of any district, for the construction and repair of roads and highways and other district purposes," etc. By subdivision 42½ of said section 25 the boards were given further power: "To levy a special road-fund tax . . . on all the property in such counties. Such tax shall be in addition to all taxes otherwise provided for, and the fund so created shall be expended for the construction and maintenance of the main public roads in the several road districts, in proportion to the amount collected from such districts." This act gives the boards power "to lay out, maintain, control, erect, and manage public roads, but it leaves untouched the provisions of the Political Code relating to the dividing of counties into road districts." Subdivision 13 of section 25 of the County Government Act not only authorizes the levy of taxes for county general purposes, but it authorizes the levy of taxes "also upon the taxable property of any district, for . . . district purposes." And subdivision 42½ of the same section seems to confer this same power. We find nothing in the County Government Act inconsistent with the provision of the Political Code, as amended by the act of 1883, relating to the road-tax system, and therefore such provisions were not repealed by section 236 of the County Government Act. Nor do we think section 2 of the act of 1883 is unconstitutional because it, in effect, exempts from taxation for county road purposes, levied under section 2654 of the Political Code, property within the municipalities designated. Appellant claims that "all property in the state, not exempt under the laws of the United States, shall be taxed in proportion to its value" (sec. 1, art. XIII) ; that the legislature shall not pass local or special laws—"Tenth. For the assessment or collection of taxes. . . . Twentieth. Exempting prop-

erty from taxation." (Const., art. IV.) Section 2664 of the Political Code, in effect April 16, 1880, read as follows: "The road-tax and property tax herein provided for must not be levied or collected from the inhabitants or property of incorporated towns and cities which, by municipal authority, levy such taxes for the streets and alleys thereof," etc. In *Martin* v. *Aston,* 60 Cal. 63, the city of Santa Cruz had levied and collected for the fiscal year 1880-1881, upon all the property in said city a tax for the fire fund, and for the purpose of sewerage a certain tax. The county assessor had taken the property of plaintiff for road property tax under sections 3820 and 3821 of the Political Code, and plaintiff brought replevin. It was held that, "according to section 2664 of the Political Code the appellant had no authority to collect taxes for road purposes from inhabitants of or property within the city." The point now presented was fully argued; the cause was heard in Bank and rehearing denied. It is urged that *Martin* v. *Aston* is distinguishable from the case here, because there the lower court found that all the property of the city had been taxed for municipal purposes, while under the act of 1883 such property is exempt if any street-work is done in the city or town "by virtue of any law relating to street-work." There is no essential difference between the two acts. Both mean that if by law the incorporated city or town is authorized to levy and collect property tax for work and improvements on the streets, such property shall not be taxed for road purposes in road districts without such city or town. The exemption from tax for general county road purposes does not rest on the fact that the city or town has levied or collected a tax for street-work greater or less than that imposed on property without the city or town, but upon the fact that the law has made the city and town separate districts and has given them authority to levy and collect the tax or otherwise provide for street improvements. Generally the burden on city property for street improvements is greater than on the property without the city for road purposes, although this burden may not always be by a tax on all the property, but may be by a direct charge on the property fronting on the improved street. Section 12 of article XI of the constitution prohibits the legislature from imposing taxes upon municipalities or upon the inhabitants or

property thereof for municipal purposes; but the legislature
"may, by general law, vest in the corporate authorities thereof
the power to assess and collect taxes for such purposes." If
the code relieved the property of the incorporated city and
town from taxation, it might be said that such a law would
violate the constitutional provision that "all property shall be
taxed in proportion to its value." But the law makes no such
exemption. It provides, in substance, that the city or town
must maintain its own streets and alleys, and when it so pro-
vides the inhabitants and property may be relieved from
taxation for roads outside. Such has been the practical con-
struction put upon our statutes for many years, and we do
not doubt its correctness. (See cases cited in *Martin* v. *Aston,*
60 Cal. 63; and see, also, the subject discussed in Cooley on
Taxation, ch. v, p. 140 et seq.)

2. It is alleged in the complaint that the corrected assess-
ment-book was not delivered by the clerk of the board of
supervisors or board of equalization to the auditor on or before
the first Monday of August, 1895, "nor was said corrected
assessment-book, when the same was delivered by said clerk
to said auditor, or when the same was thereafter delivered by
said auditor to said tax-collector, accompanied with the affi-
davit required by section 3682 of the Political Code, or with
any affidavit." Similar allegation is made that the affidavit
required by section 3732 was not, nor was any affidavit, at-
tached or subscribed to the corrected assessment-book by said
auditor when delivered by him to the tax-collector. It is also
alleged that the tax-collector failed to publish the notice
required by section 3746 "within ten days after the receipt by
him of said corrected assessment-book from said auditor," and
that the notice published by the tax-collector "was not in
conformity with the requirements of said section 3746."

Section 3682 provides as follows: "The clerk of the board
must record, in a book kept for that purpose, all changes, cor-
rections, and orders made by the board, and . . . enter upon
the assessment-book all changes and corrections made by the
board, and on or before the first Monday of August must
deliver the assessment so corrected to the county auditor, and
accompany the same with an affidavit thereto affixed, sub-
scribed by him," that he has "kept correct minutes of all the

acts of the board touching alterations in the assessment-book; that all alterations agreed to or directed to be made have been made and entered on the book, and that no changes or alterations have been made therein except those authorized." Section 3732 requires the auditor to deliver the corrected assessment-book to the tax-collector on or before the second Monday in October, with an affidavit attached thereto, subscribed by him, that he "received the assessment-book . . . from the clerk of the board of supervisors, with his affidavit affixed," and that he has "corrected it and made it to conform to the requirements of the state board of equalization," etc. Section 3746 requires the tax-collector to publish a notice specifying certain enumerated facts, "within ten days after the receipt of the assessment-book."

The assessment of property and the levying and collecting of taxes thereon are proceedings *in invitum* and are *stricti juris*. (*Weyse* v. *Crawford,* 85 Cal. 196; *Dranga* v. *Rowe,* 127 Cal. 506.) Boards of supervisors have power, sitting as boards of equalization, to increase or lower any individual assessment. (Pol. Code, sec. 3673; *Allison etc. Co.* v. *Nevada County,* 104 Cal. 161.) And the state board may increase or lower the entire assessment-roll. (Pol. Code, sec. 3692; *Baldwin* v. *Ellis,* 68 Cal. 495.) The assessment-book cannot be said to be completed ready to be transferred to the tax-collector until after the county board of supervisors has acted on the assessment as a board of equalization, and until after the auditor has "corrected it and made it to conform to the requirements of the state board of equalization." The statute requires that before the clerk of the county board delivers the assessment to the auditor he must certify by affidavit to the changes and corrections made by the county board and "that no changes or alterations have been made therein except those authorized." It is only by such affidavit that the auditor can know that it is correct. And the statute also requires the auditor to make affidavit before he delivers the assessment to the tax-collector that he has received the assessment-book from the clerk, "with his [the clerk's] affidavit thereto affixed," and stating that he (the auditor) "has corrected it and made it conform to the requirements of the state board," etc. Without such affidavit the tax-collector

cannot know that the assessment correctly represents the
assessment of the property of individual property-owners.
Without the affidavit of the clerk affixed to the assessment-
book, the auditor had no power to compute the taxes, nor had
the tax-collector the right to enforce the assessment without
the affidavit required of the auditor. These affidavits are
in effect the certificate or authentication of the assessment
as it leaves the county board of equalization and as made to
conform to the requirements of the state board, and, we think,
are essential to its validity. (*Maxwell* v. *Paine,* 53 Mich. 30;
*Westfall* v. *Preston,* 49 N. Y. 349; *Brevoort* v. *City of Brook-
lyn,* 89 N. Y. 128; Cooley on Taxation, 2d ed., 412.) This
view of the statute is strengthened by a consideration of sec-
tion 3652 of the Political Code, which requires the assessor
to subscribe an oath in the assessment-book upon completing
his assessment. The section, however, provides that "the
failure to take or subscribe such an affidavit, or any affidavit,
will not in any manner affect the validity of the assessment."
No such provision is found in the sections already noticed,
and the implication is strong that the legislature intended
to make the requirements of those sections an essential part
of the assessment-book as finally completed and as delivered to
the tax-collector. It is not reasonable to suppose that the
legislature intended that the assessment-book should be placed
in the hands of the tax-collector without any authentication
whatever. It should be observed that the complaint does not
allege that no affidavit was made by the clerk of the board or
by the auditor; the allegation is, that it did not accompany
the assessment-book, as required by section 3682. It may be
that the clerk made the affidavit after he had delivered the
assessment-book to the auditor, the same or the next day,
and it may be the auditor made the affidavit required of him
after he delivered the assessment-book to the tax-collector.
Possibly the defendant can show a sufficient compliance with
the law in these particulars. Upon this point we express no
opinion, as the question does not arise. The notice required
to be given by the tax-collector under section 3746 relates
to the time when the tax will be due and payable, and when
delinquent, and some other facts, all of which are provisions
of the statute, with notice of which the taxpayer is charged

by the statute. This notice, required by section 3746 is con-
venient and desirable, and should be given for the information
of the taxpayer, but we do not think the validity of the assess-
ment depends upon its being given. The complaint did not
allege that no notice was given; it alleged that it was not
published within ten days after the tax-collector received the
assessment. It is also alleged that the notice was not in con-
formity with the requirements of section 3746, but in what
particular is not stated.

3. It is alleged that plaintiff was assessed in the sum of
$60,000 for alfalfa growing upon the land, as a real-estate
improvement, and treated and assessed as real property. It
is claimed that alfalfa is exempt from taxation under the pro-
visions of section 1 of article XIII of the constitution and
section 3607 of the Political Code, exempting "growing
crops."

The allegation of the complaint is, that the assessor "en-
tered and assessed in the assessment-book as real property
certain growing alfalfa, and designated, listed, entered, and
assessed the said growing alfalfa as improvements on real
estate, and treated and assessed said growing alfalfa as real
property." We assume that the pleader, as well as the
assessor, referred to the permanent growth of the plant and
not to the successive crops that are or may be taken off the
land during the cropping season for alfalfa. It was held in
*Cottle* v. *Spitzer*, 65 Cal. 456,[1] that fruit-trees are not grow-
ing crops within the meaning of section 1 of article XIII of
the constitution, and are subject to taxation. Subsequently,
November 6, 1894, the people adopted section 12¾, as an
amendment to article XIII, exempting from taxation "fruit
and nut-bearing trees under the age of four years from the
time of planting in orchard form, and grapevines under the
age of three years from the time of planting in vineyard
form." Except in this particular, the constitution is un-
changed. Section 1 exempts "growing crops," but no defi-
nition of these terms is given either in the constitution or in
the code. Alfalfa is not a grass indigenous to the land of
California; it is a perennial plant, which, when properly
cared for, like fruit-trees, produces annual crops of hay or

[1] 52 Am. Rep. 805.

pasturage, for an indefinite number of years. As a hay crop, it is unlike wheat or barley, sown for hay, which produces but a single annual crop and no more. It adds value to the land, in a different degree, it may be, but in a similar manner as do fruit and nut-bearing trees. These latter are taxable, notwithstanding the exemption of "growing crops," except during a limited growing period prescribed by the constitution and the Political Code. The reasons given for taxing fruit-trees in *Cottle* v. *Spitzer*, 65 Cal. 456,[1] apply to the alfalfa plant, and it cannot be regarded as a "growing crop" in the sense these terms are used in the constitution. But the same reasons apply to raspberry and blackberry and other small berry vines, to asparagus and celery and some other garden products, which, when planted, are more or less permanent in the soil and produce annual crops from year to year without replanting, as does the alfalfa root and as do timothy and clover and many other cultivated grass roots. In the fruit-tree case the court reasoned thus: The constitution of the state (art. XIII, sec. 1) provides that "all property in the State, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained by law"; that the word "property" as used in this section includes "moneys, credits, bonds, stocks, dues, franchises, and all other matters and things real, personal, and mixed, capable of private ownership"; that "growing crops" alone are exempt; that fruit-trees are property, and, not being "growing crops," are taxable. The case presented did not show whether they were taxed as "improvements" to real property, but did show they were taxed separately from the land, and as they are part of the realty, the tax must have been imposed upon the trees as "improvements." Section 2 of article XIII requires that "land, and the improvements thereon, shall be separately assessed," and this section further provides: "Cultivated and uncultivated land, of the same quality, and similarly situated, shall be assessed at the same value," and section 13 provides that "the legislature shall pass all laws necessary to carry out the provisions of this article." In the discharge of its duty the legislature has defined the term "improvements" and the term "property" when used in the act relating to taxation. The definition given

---

[1] 52 Am. Rep. 805.

to property is the same as given by the constitution, but the constitution does not define "improvements" to land, but leaves the legislature to do so. Turning to section 3617 of the Political Code, and we find the definition: "1. All buildings, structures, fixtures, fences, and improvements erected upon or affixed to the land, *except telephone and telegraph lines.* 2. All fruit, nut-bearing or ornamental trees and vines, not of natural growth, *excepting fruit and nut-bearing trees under four years of age, and grapevines under three years of age.*" When *Cottle* v. *Spitzer*, 65 Cal. 456,[1] was decided the statute read as now, except as shown above by italics. There was therefore statutory authority for treating fruit-trees as "improvements" and for taxing them as such, and the decision upheld the statute. There is no such statute as to alfalfa, for it cannot be claimed that this plant comes within subdivision 1 as above quoted. There is, then, no authority given in terms to tax alfalfa separately from the land as an improvement thereto. It cannot be taxed as personal property before it is severed, since it is realty until severed. It may be that the growing crop could be mortgaged as personalty, as can ordinary growing crops, including fruit growing on the tree, but the plant—the permanent root which is what is here in controversy—is part of the land, and is realty, as are the "improvements" above enumerated.

The assessor has no authority to add alfalfa to the definition given to the word "improvements" by the legislature, and until the legislature has declared this plant to come within the definition of improvements to land it cannot be separately assessed as such. We do not think the court should by construction enlarge the definition given by the legislature to the term "improvements," and unless the court can do so the assessor certainly cannot.

4. The causes of action are in favor of plaintiff, as surviving partner of Miller & Lux; the protest respecting the property was made for Miller & Lux's share of the taxes, and on that firm's behalf alone. The action was properly brought and was not obnoxious to the demurrer for nonjoinder of parties or for improperly uniting causes of action. (Code Civ. Proc., sec. 384.)

The judgment should be reversed, with directions to the

[1] 52 Am. Rep. 805.

lower court to overrule the demurrer, with leave to the defend-
ant to answer if it be so advised.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judg-
ment is reversed, with directions to the lower court to overrule
the demurrer, with leave to the defendant to answer.

Harrison, J., Van Dyke, J., Garoutte, J.