THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* NATHAN PULVER, Respondent.

Third Department, June 21, 1929.

*Hamilton Ward, Attorney-General [Eric J. Lake, Deputy Assistant Attorney-General,* of counsel], for the appellant.

*Beecher S. Clother,* for the respondent.

VAN KIRK, P. J.  The lands in question are situated in the Forest Preserve.  (Conservation Law, § 63, added as § 62 by Laws of 1916, chap. 451, as amd. by Laws of 1917, chap. 266; renum. and amd. by Laws of 1928, chap. 242.)  These lands were sold for unpaid taxes on December 29, 1885; the period of redemption expired in December, 1887 (Laws of 1855, chap. 427, § 50, as amd. by Laws of 1881, chap. 402); deeds were given by the Comptroller to the People of the State of New York April 22, 1890, and were recorded in Warren county January 28, 1892.  The larger lot, ninety-eight and three-fourths acres, was sold for unpaid taxes for the years 1878 to 1881, inclusive.  The trial court found that the

lands included in the complaint herein are now and always have been wild, vacant, forest lands and that, at the expiration of the period of redemption, no one was in actual or visible possession thereof; that the tax roll for the year 1878 was not signed or verified by the assessors and that the tax sale of 1885 was, therefore, void; that, pursuant to section 13 of chapter 711 of the Laws of 1893 (now section 133 of the Tax Law, entitled "Possession of lands by the State"), the Comptroller (the Department of Taxation and Finance) published the authorized notice "for three weeks successively, once in each week, commencing on the 14th day of December, 1894." The failure of assessors to sign and verify a tax roll constitutes a jurisdictional defect. Jurisdictional defects are not affected by curative acts, but a Statute of Limitations "will bar any right, however high the source from which it may be deduced, provided that a reasonable time is given a party to enforce his right." (*Meigs* v. *Roberts*, 162 N. Y. 371, 378.) Section 132 of the Tax Law (as amd. by Laws of 1928, chap. 845, derived from Laws of 1896, chap. 908, § 132) is in part a Statute of Limitations, as follows: "Every such conveyance [in pursuance of a tax sale] heretofore executed by the Comptroller * * * and all conveyances of the same lands by his grantee or grantees therein named, which have for two years been recorded in the office of the clerk of the county in which the lands conveyed thereby are located, and all outstanding certificates * * * that shall have remained in force for two years after the last day allowed by law for redemption from such sale, shall be conclusive evidence that the sale and proceedings prior thereto, from and including the assessment of the lands, and all notices required by law to be given previous to the expiration of the time allowed for redemption, were regular and were regularly given, published and served according to the provisions of all laws directing and requiring the same or in any manner relating thereto, but all such conveyances * * * shall be subject to cancellation, by reason of * * * any defect in the proceedings affecting the jurisdiction upon constitutional grounds, on direct application to the department [formerly Comptroller], or in an action brought before a competent court therefor; provided, however, that such application shall be made, or such action brought, in the case of all sales held prior to the year eighteen hundred and ninety-five, within one year from June fifteenth, eighteen hundred and ninety-six * * *."

Section 133 (as amd. by Laws of 1928, chap. 845) provides as follows: "The Department of Taxation and Finance [formerly Comptroller] may advertise once a week, for at least three weeks successively, a list of the wild, vacant and forest lands to which

the State holds title, from a tax sale or otherwise, in one or more newspapers to be selected by it [him], published in the county in which the lands are situated, and from and after the expiration of such time, all such wild, vacant and forest lands are hereby declared to be and shall be deemed to be in the actual possession of the People of the State [formerly Comptroller], and such possession shall be deemed to continue until they have [he has] been dispossessed by the judgment of a court of competent jurisdiction."

In section 133 the Legislature emphasizes a distinction between occupied and vacant lands. The possession by the People of the State of unoccupied lands in the Forest Preserve under the published notice is an actual possession for the purpose intended by the statute, namely, a possession which displaces the presumed possession which follows the legal or record title of unoccupied lands and which justifies an action against the State for possession thereof by a party claiming to own it. Thus for the purposes here the People of the State were in actual possession of these lands and defendant was not in constructive possession, even though he may have a record title. (*Meigs* v. *Roberts*, 162 N. Y. 371, 380.) The expression in this section, wild, vacant and forest lands to which the State " holds title," means less than an actual, good, title, but cannot mean a naked claim of title with no pretense of possession to lands occupied by another. " It means something between these two extremes — it means a claim of title to vacant lands or to lands in its possession." (*People* v. *Ladew*, 237 N. Y. 413, 428.) The words " holds title " include a title by a deed after a tax sale as here, but which title was voidable because of some defect in the proceedings which led up to the sale. (*Ostrander* v. *Bell*, 199 App. Div. 304, 309; affd., 234 N. Y. 566.)

The deed to the State had been recorded and the Comptroller's notice had been published more than two years before this action was begun. Section 133 authorized an action against the State and gave a landowner opportunity to assert his rights as against the State in a court. The Statute of Limitations began to run at the expiration of the publication of the published notice that the State had taken possession of the lands. (*Meigs* v. *Roberts*, *supra*, 379.) Thus an action by the defendant was barred before this action was begun and the rights of the State had matured.

What then is the standing of the State with respect to this title? In section 133 it is provided: " Such possession [of the People of the State] shall be deemed to continue until they have been dispossessed by the judgment of a court of competent jurisdiction." The People have not been so dispossessed. Section 132 provides that every conveyance given by the Comptroller in pur-

suance of a tax sale, which has for two years been recorded in the county clerk's office, shall be conclusive evidence that the sale and proceedings prior thereto were regular. In this respect this section is a rule of evidence to govern future controversies. (*People* v. *Turner*, 117 N. Y. 227, 232; *Baer* v. *McCullough*, 176 id. 97, 105, 106.) It was a purpose of the Legislature to provide a procedure by which the title to unoccupied lands in the Forest Preserve could be determined where there was a dispute between the People of the State and another and when so determined, if in favor of the People, that it should remain permanently in the People. When the limitation statute had run (the lands being unoccupied at the expiration of the redemption period), the Comptroller's deed to the People became conclusive evidence of the title in the People. The People could not thereafter be ousted from possession and their right to possession became permanent and their title complete. (See Const. art. 7, § 7.) The rule that a Statute of Limitations may be used as a shield, but not as a sword, applied in equity actions, does not apply here.

The concession made by the Attorney-General at the close of the evidence on the first hearing is not material or binding upon plaintiff. The case was thereafter opened and further evidence was taken, which discloses that the court and the attorneys recognized that the concession was abandoned. The judgment should be reversed and judgment rendered that plaintiff is the owner and entitled to the immediate possession of the premises described in the complaint, without costs.

We approve the findings of fact as marked by Mr. Justice ANGELL and the conclusions of law as proposed by plaintiff but " refused " by Judge ANGELL; and we disapprove the findings of fact and conclusions of law made by Mr. Justice CRAPSER. The plaintiff is entitled to judgment accordingly, without costs.

HINMAN, DAVIS and HILL, JJ., concur; HASBROUCK, J., dissents.

Judgment reversed on the law and facts, with costs, and judgment directed that plaintiff is the owner and entitled to the immediate possession of the premises described in the complaint, without costs.

The court approves the findings of fact as marked by Mr. Justice ANGELL and the conclusions of law as proposed by plaintiff but " refused " by Justice ANGELL; and the court reverses the findings of fact and disapproves the conclusions of law made by Mr. Justice CRAPSER; the court finds the plaintiff is entitled to judgment accordingly, without costs.