## TELONIS v. STALEY et al.

No. 6168. Decided Aug. 15, 1940. (106 P. 2d 163.)

See 4 C. J. S., Appeal and Error, Sec. 1421.

Implied notice as sufficient in cases involving adverse possession, note, 97 A. L. R. 98. See, also, 1 Am. Jur., 873.

H. G. Metos and Allen T. Sanford, both of Salt Lake City, for appellant.

O. K. Clay, of Tooele, and F. W. Keller and Henry Ruggeri, both of Price, for respondents.

LARSON, Justice

Plaintiff appeals from a judgment and decree of the District Court of Carbon County quieting defendant's title to the surface rights of certain coal mining property. In 1932 the Union Pacific Coal Company was the owner of the property in Carbon County involved in this action. The State Tax Commission in that year assessed the values of the real estate, separately evaluating for tax purposes the surface right of the land and the mineral or coal rights, and certified the same to Carbon County. These values were spread upon the county tax records and all proceedings relative to the levy of taxes were carried out pursuant to law. The Company failed to pay the taxes, and after advertisement for delinquency the property was on January 10, 1933, sold for taxes to Carbon County. Record of the sales was duly noted in the Treasurer's office and a tax sale certificate was filed with the County Recorder. No redemption being made the County Auditor on January 12, 1937, issued to the County auditor's tax deeds. The property was duly advertised and offered for sale at the May sale, but there were no bidders. On June 18, 1937, the County at private sale, for a consideration of $2,000 sold and conveyed to defendants, Staley and Sillitoe, the surface rights to the property. In December 1937 Staley and Sillitoe mortgaged said surface

rights to defendant Carbon-Emery Bank for $4,000. On January 11, 1938, the Union Pacific Coal Company for a consideration of $200 quit claimed the real estate to plaintiff, who on February 2, 1938 commenced this action by filing complaint in the simplest form to quiet his title. By both answer and counterclaim defendants asserted title in Staley and Sillitoe by virtue of the tax sale proceeding above noted. Plaintiff by reply joined issue. The cause was tried largely upon record and documentary evidence, and there is no material dispute in the facts. The result depends upon the validity of defendants' tax title. Plaintiff assails the same on four grounds, to wit:

(1) Being mining property, the mineral and surface rights were separately assessed, and should have been separately sold.

(2) The certificate of sale is void because: (a) It does not show the year for which the taxes were unpaid; (b) It recites that the property was assessed, inter alia, for city and city school taxes, when in fact the property is not within any city.

(3) The auditor's tax deed is void because it contains recitals that the certificate of sale shows (a) the year for which the taxes were unpaid, when in fact the certificate does not so show, (b) that the property was assessed for city and city school purposes when in fact it was not in any city, and (c) that the assessment roll was not verified by the auditor as required by Sec. 80-8-7, R. S. U. 1933.

(4) The foregoing voids defendants' title and therefore plaintiff's title should have been quieted. We note them seriatim.

(1) The statutes in effect at the time of the assessment, levy, and sale here involved were Sections 5864, 5873, 5928, 5929 and 5932, Comp. Laws 1917, as amended by Chapter 53, Laws of Utah 1931, and Chapter 139, Laws of Utah 1921. Section 5864 as far as pertinent here provides:

"All other mines or mining claims and other valuable mineral deposits, including lands containing coal or hydrocarbons, shall be

assessed at their full value. All machinery used in mining and all property or surface improvements upon or appurtenant to mines or mining claims, and the value of any surface use made of mining claims or mining property for other than mining purposes, shall be assessed at full value. For the purposes of this section, all mills, reduction works and smelters used exclusively for the purpose of reducing or smelting the ores from a mine or mining claim by the owner thereof shall be deemed to be appurtenant to such mine or mining claim though the same is not upon such mine or mining claim. In all cases where the surface of lands is owned by one person and the mineral underlying such lands is owned by another, such property rights shall be separately assessed to the respective owners."

Section 5873, as far as pertinent here, provides:

"* * * mines and mining claims and other valuable deposits including lands containing coal or hydrocarbons including non-metalliferous minerals underlying land the surface of which is owned by a person other than the owner of such minerals, and all machinery used in mining and all property or surface improvements upon or appurtenant to mines or mining claims and the value of any surface use made of non-metalliferous mining claims or mining property for other than mining purposes, must be assessed by the tax commission as hereinafter provided."

Section 5928 declares the assessments made by the Tax Commission to be the only basis of taxation of such property. Section 5929 requires the owner of every coal mining claim or lands containing coal to file yearly with the Tax Commission a detailed statement of all such lands owned by him, by government survey, giving the full value of each claim or legal subdivision of 40 acres, including a detailed list of all tools and machinery, etc., with full value of each separate article, all buildings or improvements upon or appurtenant to such lands; the value of each building or improvement separately stated; and such part of the surface as has independent use, and the value thereof for such use. And then Section 6018, as amended by Chapter 139, Laws of Utah 1921, providing for delinquent sales, declares inter alia the treasurer shall sell to the county all real estate upon which taxes are delinquent and make a record thereof in his office, describing the several parcels

of real property as he sold them, *"stating the aggregate amount of taxes due* on the property therein enumerated, provided that *taxes levied only on a certain kind or class of property for a special purpose shall be separately set out."* Section 6020, Laws of Utah 1921, provides that the certificate of sale shall state *"the aggregate amount* of taxes due on said property in one column provided that the [*special taxes* set out (in Section 6018)] shall be *separately set out."* It seems clear therefore that the taxes on all interests of the owner are to be stated only in the aggregate, except the special purpose taxes indicated, in accordance with the rule that enumeration of special ones excludes all others. Under our statutes covering general property taxes, improvements are separately valued and assessed, but lumped in the aggregate and sold with the realty for nonpayment of tax, as is also personal property attached to the realty of the owner for tax purposes. As shown above, not only improvements of coal mining lands but all improvements located on other lands and used exclusively in connection with the coal lands are made appurtenant to the coal lands, and the mine sold for such taxes if delinquent.

Plaintiff argues that because the statute calls for a separate valuation or assessment of coal and surface rights, each became a distinct tax entity. By that test improvements should likewise be separately taxed and sold. He further argues that the owners should have the right to pay the tax on either, or redeem either. He might make the same argument with respect to improvements. The fact is that he did not offer to pay the taxes on either nor offer to redeem either, and does not now seek or desire to do so. Had he come in and offered to redeem the surface rights in time, the County might have permitted him to do so. Not having offered, and not now offering to do so, he can hardly complain that he might have deserved this privilege in the past. *Deseret Irrig. v. Bishop,* 92 Utah 220, 67 P. 2d 210. But he permitted the time of redemption to pass, permitted his title to slip from him to another, and he has now no right of

redemption. He cannot well complain of the loss of a right he never sought to exercise and does not claim or seek to exercise even now. *Plaintiff does not deny, and in fact admits, the validity of the assessment, levy of tax, its delinquency and the sale of the property.* In none of those proceedings does he assert or show any error or serious irregularity. When therefore a tax was validly levied, noticed, and remained unpaid, and the property sold therefor, the owner could maintain his right therein only by redemption. Since all proceedings up to sale are valid, plaintiff is limited thereafter to his redemption right. Time for redemption having expired, he can claim nothing. *White Pine Mfg. Co.* v. *Morey,* 19 Idaho 49, 112 P. 674.

(2)   Plaintiff next contends that the tax title fails because (a) the recitals in the certificate of sale do not show the year for which the sale was made; and (b) the certificate contains recitals that the property was assessed for city and city school taxes, when in fact the property is not within any city. Assuming for the argument that such defects would render void the certificate of sale, it does not help the cause of plaintiff. The certificate of sale is not jurisdictional—neither the right to sell nor the conveyance of title is dependent upon the certificate. *Bruno* v. *Madison,* 38 Utah 485, 113 P. 1030, Ann. Cas. 1913B, 584; *Armstrong* v. *Jarron,* 21 Idaho 747, 125 P. 170; *Bacon* v. *Rice,* 14 Idaho 107, 93 P. 511. The tax sale is made by the treasurer when the tax remains delinquent and unpaid at sale day. Conceding the regularity of proceedings up to that point, that sale as and when made places the owner from the moment forth as limited to the right of redemption. He is not interested in the certificate of sale; it can confer no rights on him. It is given to the county and filed in the county recorder's office as notice to all the world that the property has been sold for taxes, and any one acquiring an interest therein through the owner takes subject to the county's claims. Furthermore it is reasonably clear that the certificate of sale is not intended as the only evi-

dence of the sale. The treasurer must make and keep in his office a record of sales, showing a description of the property, the amount of taxes and costs, and other proceedings incident to the collection of taxes and sale for nonpayment. R. S. U. 1933, Sec. 80-10-33. The certificate of sale is a copy or memorandum of sale filed with the recorder to give notice to the world. Should there be a discrepancy between the Record of Sales and the recitals in the certificate the record of sale will control. *Bruno* v. *Madison,* supra; *Clark* v. *Thompson,* 37 Iowa 536; *Kneeland* v. *Hull,* 116 Mich. 55, 74 N. W. 300. Other states under statutes like ours have held in accordance with these views. See *Otoe County* v. *Brown,* 16 Neb. 394, 20 N. W. 274; Id., 16 Neb. 398, 20 N. W. 641. The Supreme Court of Michigan in *Muirhead* v. *Sands,* 111 Mich. 487, 491, 69 N. W. 826, 828 held that the

"owner cannot be concerned as to the form of the certificate given to the purchaser, nor would it be material if no certificate was given at all."

And under a statute similar to ours the Oklahoma court in *Pentecost* v. *Stiles,* 5 Okl. 500, 49 P. 921, 923, held,

"The tax sale, so far as the owner of the property is concerned, may be as valid without the certificate as with it."

The certificate of sale is not a muniment of title. The legal title is divested and the property conveyed to the county by the auditor's tax deed, at the end of the redemption period, and by the express provisions of the statute that deed is made prima facie evidence of the regularity of all matters therein recited. Sec. 80-10-66, R. S. U. 1933, being Sections 6030 and 6055., C. L. U. 1917, including the fact that a certificate of sale had been issued, which issuance is prima facie evidence of the regularity of all proceedings up to that time. Sec. 80-10-35, R. S. U. 1933. The certificate of sale involved in this case was very substantially in the form prescribed by the statute, Sec. 80-

10-35, R. S. U. 1933, being Sec. 6021, Laws of Utah 1921, p. 382, which section further makes the certificate prima facie evidence of the regularity of all proceedings connected with the assessment, notice, equalization, levies, advertisement and sale of the property, and the burden of showing an irregularity in the proceedings resulting in the sale is upon him who asserts it. *Wilson* v. *Locke*, 18 Idaho 582, 111 P. 247. *McGowan* v. *Elder*, 19 Idaho 153, 113 P. 102. No attempt was made by plaintiff to show any irregularity in any of the proceedings leading up to and resulting in the sale, nor is it claimed there were any such. *So the fact that a certificate was issued* establishes prima facie the regularity of all proceedings up to and including the sale. Plaintiff argues that the recital in the certificate is prima facie evidence that the land was improperly assessed for city taxes, but the statute does not so provide. It does not make the certificate evidence of any recitals therein, but makes it prima facie evidence of the *regularity* of prior proceedings, that is of the assessment, levies, and even notices and equalization which are not recited therein; and the *burden of showing irregularities* is on him who asserts it. This cannot be shown or inferred from recitals in the certificate. This will appear more conclusively from what is said in the discussion of the next question.

(3) Is the auditor's tax deed void because it contains recitals that the certificate show the land was sold for taxes for 1932, when the certificate does not show which year; and also that the certificate contains a recital that the property was assessed and sold, for city and city school taxes to which it was not subject, along with other taxes to which it was subject? Sec. 80-10-66 provides that the auditor's tax deed is prima facie evidence of the facts *"recited therein."* Herein it differs from the certificate of sale, which is not evidence of the things therein recited, but of certain facts enumerated by the statute. Section 80-10-35. These sections, 80-10-35 and 80-10-66, are rules of evidence, and provide that the issuance of a certificate of sale and the

recitals in the deed shall be prima facie evidence of the matters indicated by the statute. No further proof is required from the person relying upon the tax sale or title to show the regularity of all proceedings up to and including the sale than the fact that the certificate of sale was issued. So no further proof is required of such person, as to any matters recited in the auditor's deed, than the deed itself. While such matters are established prima facie by the evidence indicated, it is not the only evidence and may be rebutted. So, although the deed contained a recital that the lands were assessed for city and city school taxes, such recital was rebutted by the evidence adduced by plaintiff himself when he put in evidence as part of his case in chief Exhibits D, G, and F, being the assessment, apportionment by the State Tax Commission, the County Assessment Roll, and the County Tax computation on this property, respectively showing it was not assessed as within any city or town, and that no city or city school or town tax was figured or computed or levied against it. So when plaintiff himself resorted to the records, put them in evidence over defendants' objections, and thus conclusively showed that the lands were not assessed for city and city school taxes; and upon the evidence so put in by him, the court found the lands were not so assessed—plaintiff cannot now avail himself of such erroneous recitals in the instrument. There is no claim that there was any irregularity in any of the proceedings, but only that the instruments (the certificate and deed), are void for surplusage in their contents. All the tax proceedings being valid, the property having been sold, and the redemption period having expired, plaintiff is simply out. *White Pine Mfg. Company* v. *Morey,* supra.

But there is another conclusive reason why plaintiff must fail in this action. Even if we assume the case most favorable to plaintiff, to wit: that there are informalities and irregularities in the certificate of sale and in the auditor's tax deed, and also assume that the lands were overtaxed because some city and city school taxes had been added into

the aggregate amount of tax, there are statutory provisions governing the questions. Sec. 80-11-7, R. S. U. 1933, reads:

"*No* assessment or *act relating to* assessment or *collection of taxes* is illegal on account of informality or because the same was not completed within the time required by law." (Italics added.)

And Sec. 80-10-38 provides:

"Whenever property is sold for the nonpayment of delinquent taxes, and the assessment *is valid in part and void as to excess*, the sale must not for that cause be deemed invalid, nor shall any grant subsequently made thereunder be held insufficient to pass a title to the grantee, unless the owner of the property or his agent, not less than six days before the time at which the property is advertised to be sold, delivers to the treasurer a protest in writing signed by the owner or agent, specifying the portion of the tax which he claims to be invalid, and the ground upon which such claim is based." (Italics added.)

If therefore there was charged against this property an excess tax (city and city school) that does not affect the validity of the sale or defendants' title, plaintiff not having complied with or made any effore to comply with the last quoted section. This is in keeping with the past decisions of this court. As pointed out by Mr. Justice Cherry, speaking for the court in *Hatch* v. *Edwards*, 72 Utah 113, 269 P. 138, the statutes now in force are materially different from those which controlled in *Wall* v. *Kaighn*, 45 Utah 244, 144 P. 1100; *Lawrence* v. *Murphy*, 45 Utah 572, 147 P. 903; and *Thompson* v. *Taylor*, 61 Utah 164, 211 P. 696; *Fisher* v. *Davis*, 77 Utah 81, 291 P. 493; *Asper* v. *Moon*, 24 Utah 241, 67 P. 409. The cases of *Moon* v. *Salt Lake County*, 27 Utah 435, 76 P. 222; *Jungk* v. *Snyder*, 28 Utah 1, 78 P. 168; *Olsen* v. *Bagley*, 10 Utah 492, 37 P. 739; *Tintic Undine Mining Co.* v. *Ercanbrack*, 93 Utah 561, 74 P. 2d 1184; *Burton* v. *Hoover*, 93 Utah 498, 74 P. 2d 652, were all cases where the errors were made in the assessment and the attack was directed at the assessment and levy, not the form of the instruments executed. Even in Wall v. Kaighn and the case following it, under the old statute the attack was made on

the sale or proceeding prior thereto, and the deeds were merely used as evidentiary of the proceedings which had been taken at or prior to the sale under the statute that the recitals in a *deed* are prima facie evidence of the things therein recited. We know of no case which has held a tax sale void merely because of informalities or irregularities in the auditor's tax deed.

We come now to a consideration of plaintiff's point 3'(c), that the sale and tax proceedings must fail because of the claimed failure of the auditor to attach to the assessment roll an affidavit as required by Section 80-8-7, R. S. U. 1933.

It is argued that such section must be literally complied with or the assessment and all subsequent proceedings are utterly void. It has even been held that a variance in the wording of the affidavit is fatal. In *Richardson* v. *Howard,* 23 S. D. 86, 120' N. W. 768, 769, it is held that the assessment and all proceedings fail because the affidavit there subscribed used the words "full and true value" while the statutory form read "full and true *cash* value." And in *Friedner* v. *Galveston,* Tex. Civ. App., 229' S. W. 950, the assessor had signed the statutory form of certification, but it lacked the seal of the notary. Under such rule what would happen in this state where the statutory form of affidavit requires the auditor to *swear in affidavit form* that "I received the accompanying assessment roll * * * *from the assessor"?* Section 80-5-30' requires the assessor to deliver the rolls to the county treasurer. Section 80-10-12 requires the treasurer to deliver the book to the auditor. If therefore the auditor must swear he received them from the *assessor* he would be required to swear to a *false affidavit* and commit perjury. *United States* v. *Klink,* D. C., 3 F. Supp. 208. And under the cases referred to above the affidavit must be in the exact language of the statute or it has no validity. It certainly never was the intention of the legislature to make the validity of tax proceedings depend upon a false *affidavit.* The section under discussion, 80-8-7, is listed among the "Duties of the Auditor." There is no statute

providing that the failure of the auditor to swear to the affidavit (which would be false in form and substance) shall nullify any assessment or other proceeding. But Section 80-5-30 is very significant in this connection. It provides that the assessor must make and subscribe an affidavit to the assessment roll as therein set forth. It then provides that he shall not be paid or draw any compensation until the affidavit is subscribed. The statute then reads:

"A failure to make or subscribe such affidavit, *or any affidavit*, will not in any manner effect the validity of the assessment." (Italics added.)

The statement *"or any affidavit,"* certainly cannot refer to affidavits by the assessor because there is no provision for the assessor making any affidavit other than the one provided in the section itself. Clearly it must refer to other affidavits required by law to be made relative to the tax rolls and records, because it states that the failure to make *any* affidavit "will not in any manner affect the validity of the assessment." We may note also that the auditor is required to make another affidavit as to the correctness of the assessment roll after equalization has been had, which however is not attached to the roll. Section 80-7-9, R. S. 1933. It would seem however it might be evidence of the correctness and authenticity of the figures on the rolls.

We have a statute, Section 80-11-7, R. S. U. 1933, providing that "no assessment or act relating to assessment or collection of taxes is illegal on account of informality or because the same was not completed" in time. Idaho has sections like our 80-8-7 and our 80-11-7, which have been construed by the Supreme Court of that state a number of times. In the case of *Stewart* v. *White,* 19 Idaho 60, 112 P. 677, 678, the Idaho court followed the rule announced in Bacon v. Rice, and cited the case of *Couts* v. *Cornell,* 147 Cal. 560, 82 P. 194, 109 Am. St. Rep. 168, and said:

"It was held, in effect, * * * that there is an enforceable obligation to pay a general annual tax, which in a sense is legal as

well as moral; and a lien therefor is established by law irrespective of the irregularities or informalities of the assessment. Even if there were some informalities in the assessment or collection of the taxes upon said land, those were all cured by the provisions of section 1788, Rev. Codes, which section is as follows: 'No assessment, or act relating to assessment, or collection of taxes is illegal on account of informality, nor because the same was not completed within the time required by law.' "

And in *Armstrong* v. *Jarron*, supra, the same court said [21 Idaho 747, 125 P. 174]:

"In finding No. 5 the court finds that the assessor of said county failed to append the certificate required by section 1727 of the Rev. Codes or any certificate of any kind whatsoever. Section 1727, Rev. Codes, provides: 'On or before the first day of July in each year the assessor must complete his assessment roll. He and his deputies must take and subscribe an affidavit in the assessment book, to be substantially as follows.' Then follows the oath in which the assessor or his deputy verifies that he has made diligent inquiry and examination to ascertain all the property within the county subject to assessment, and that the same has been listed and assessed on the assessment book equally and uniformly, and that he has complied with the duties imposed upon him by law. This section is directory and not mandatory and is required for the purpose of making the assessment roll as made by the assessor verify itself as to the truth of the things contained in it, and for the purpose of showing that the assessor has performed his duties. In said section it is provided: 'But the failure to take or subscribe such affidavit as required by this section shall not in any manner affect the validity of the assessment. The making of such affidavit is declared, however, to be a duty pertaining to the office of every assessor in this state'—thus showing the intention of the Legislature to be that the failure to make the affidavit should not affect the validity of the assessment made by the assessor, but would subject the assessor to certain proceedings for failure to perform his official duties. J. R. Lydon, present clerk of the district court and ex officio auditor and recorder, and who held the same office in 1906, testifies that the affidavit required by sections 1724 and 1727 was not appended to the assessment at the time the assessment book was delivered to the tax collector, but was attached on the 7th day of March, 1911. It was an oversight. He had done it on all previous assessment rolls. This finding of the trial court, therefore, would in no way affect the validity of the tax sale or the tax deed or the appellant's title."

In the case of *McGowan* v. *Elder,* 19 Idaho 153, 113 P. 102, this court announces the rule of law in the syllabus, as follows:

"Where property is the subject of taxation, and the assessment has been legally made, and there is a default in the payment of such taxes, and the property is sold at tax sale in accordance with the provisions of the statute, such property cannot thereafter escape taxation through some failure of the officer to perform his duty, unless it has actually misled the party to his injury."

And in *White Pine Mfg. Co.* v. *Morey,* supra, the court says [19 Idaho 49, 112 P. 675]:

"It has been accordingly held that not all the provisions of the statute with reference to the assessment of property and the sale for taxes are mandatory, but that on the contrary some of those provisions are only directory. * * *

"On the other hand, as above observed, the later authorities are overwhelming to the effect that if the proceeding has been regular and a tax sale has been made in substantial conformity with the law that the time within which the landowner may redeem is fixed and limited by the statute, and that after the expiration of such period he has no right of redemption, whether a deed has issued or not."

The Oklahoma Court in *Re Rolater et al.,* 67 Okl. 215, 170 P. 507, 508, says:

"The failure of the assessor to verify the assessment roll was not such an irregularity as to render the assessment void. In the case of the *Board of County Commissioners* v. *Field* [63 Okl. 80], 162 P. 733, this contenttion was made, and Mr. Justice Hardy, in delivering the opinion of the court, said:

" 'And if in fact the affidavit required by said section were not attached to the assessment roll, the failure of the assessor to make said affidavit and attach it would not render the tax illegal nor entitle the plaintiff to any relief in this proceeding. The requirement in this regard is directory, and the failure upon the part of the assessor to attach said oath to the assessment roll is an irregularity merely, and will not defeat the tax in a collateral proceeding.'

"It is urged by counsel that the instant case does not fall within the rule announced in that case, for the reason this is an appeal, a direct proceeding, and that was an injunction suit, a collateral proceeding. The language, 'and will not defeat the tax in a collateral proceeding'

is merely an application of the conclusion that the requirement is directory to the facts of that case."

Other cases holding the absence of the oath is a mere irregularity and does not vitiate the roll are *Wallapai Mining* v. *Territory*, 9 Ariz. 373, 84 P. 85; *Equalization Board* v. *Land Owners*, 51 Ark. 516, 11 S. W. 822; *Chestnut* v. *Elliott*, 61 Miss. 569; *State ex rel. Howard* v. *Timbrook's Estate*, 240 Mo. 226, 144 S. W. 843; *Spiech* v. *Tierney*, 56 Neb. 514, 76 N. W. 1090; *Merriam* v. *Dovey*, 25 Neb. 618, 41 N. W. 550; *Odiorne* v. *Rand*, 59 N. H. 504; *Board of Commissioners* v. *Field*, 63 Okl. 80, 162 P. 733; *Avant* v. *Flynn*, 2 S. D. 153, 49 N. W. 15; *In re Rolater,* supra. We think the better policy and reasoning are that the statute requiring the auditor's oath is merely directory, and not mandatory.

There is another reason why plaintiff must fail on this point. Under our statute the certificate and auditor's deed are prima facie evidence of the matters as pointed out above, and the burden is upon the person who assails them to prove the defects. When defendants here put in evidence the certificate and deed they made their case unless the plaintiff could show irregularities to upset the title. To show there was no valid assessment, he must prove that fact. He did not sustain that burden. He rested content upon the single statement by Mrs. Oberto, the present treasurer, that on the day of her testimony, October 3, 1938, there was no such affidavit attached to the assessment roll for 1932. No effort was made to show there had been no such affidavit attached nor to show the affidavit was not on file at that very time in the office. As against the presumptions declared by the law the court could well have found, as it did find, that the rolls had been properly verified in 1932. But before this question was asked and answered, plaintiff as proof of certain other facts essential to his claims, had put in evidence over defendants' objections the assessment roll covering these lands and the tax computations upon them for 1932, the year in question; and even after the ques-

tion now under consideration was before the court and the witness had answered as indicated above, plaintiff had Mrs. Oberto testify from the rolls and submit computations based upon them, which evidence was in support of other allegations and claims to sustain his case, and not designed to disprove the presumption of a valid assessment. The evidence a party puts in the record may conclude him and he cannot be heard, as is apparent here, to put the tax rolls in evidence as a valid assessment to show an auditor's deed and certificate of sale invalid because of a claimed departure from the assessment, and failing in that shift to the position that the roll is not competent evidence of an assessment having been made. (Even in this day of automobiles one cannot play "horse" with the court.)

What then is the purpose of the affidavit required of the auditor? What is the purpose of any oath of verification? Clearly to make the record prove itself. Such affidavit establishes the genuineness of the record without other proof. It is like an acknowledgment on a deed or other instrument required for recordation. But the absence of a notary's acknowledgment on a deed does not vitiate the deed. It merely necessitates other proof of its genuineness. So with these statutory oaths of officers to public records. They are verifications which prove the instrument, and establish their prima facie accuracy. If one had need to resort to the assessment roll to prove a fact shown thereby and the roll was not verified, it may be the roll would not become competent evidence. Like the record of an unacknowledged deed or mortgage, not being verified so as to entitle it to recordation, it perhaps imparts no notice, but as between the parties concerned it is effective. Since however the regularity of tax proceedings is assumed or proved prima facie by the fact of a sale and auditor's deed, and the burden of disproving any irregularity is upon the person assailing the tax proceedings, lack of verification of records would militate against the attacker rather than the holder of the tax title. If the tax title claimant, as was our rule at the time of

Wall v. Kaighn and other early cases, had the burden of proving the validity of all tax steps, so he must rely on the record and not the presumption set up for him by the statute, the absence of the auditor's affidavit to the roll might affect him. Such is the case in the decisions cited by Mr. Justice WOLFE. We will note many of them briefly. In California at the time the cases of *Miller* v. *Kern County*, 137 Cal. 516, 70 P. 549, was decided the burden was upon the tax title claimant to prove by the record the regularity of all proceedings commencing with the assessment and ending with the deed to the purchaser from the county, and any defect in those proceedings vitiated the sale. In the Miller case the matter came up on demurrer. The complaint alleged that the assessment roll was not verified as required by law. The demurrer admitting such fact, the court in effect held that the unverified roll would not be evidence and the claimant therefore could not prove an assessment. To the same effect is *Henderson* v. *Ward*, 21 Cal. App. 520, 132 P. 470, wherein the trial court found the roll was not verified and therefore could not be used as evidence. The appellate court affirmed. Exactly the same is *Moyer* v. *Wilson*, 166 Cal. 261, 135 P. 1125. In *Brady* v. *Davis*, 168 Cal. 259, 142 P. 45, the validity of the assessment was not challenged. The tax title claimant, who had to rely on the record, admitted the roll had not been verified, so it was not admissible as evidence of an assessment. *Leonard* v. *Jaffray*, 175 Cal. 371, 165 P. 956, merely upholds the finding that there was no affidavit; the evidence not being shown. *Brewer* v. *Kulien*, 42 Wyo. 314, 294 P. 777; and *Sidlo, Simons, Day & Co.* v. *Phillips*, 48 Wyo. 390, 49 P. 2d 243 are cited. Wyoming follows the rule that the tax title claimant has the burden of proving by the record the validity of every step in the tax proceeding. The evidence was conclusive, the officer testifying he had never verified the rolls. They therefore could not be used as evidence to prove the assessment. The Texas cases cited, as shown by *Friedner* v. *Galveston*, supra, follow the same rule. That was a case in

which the city sued for a tax. The question was: Does the unverified roll constitute proper evidence of a valid assessment? The court held that the burden was on the party who brought the suit to enforce a tax to prove its validity and he could not use the unverified roll as evidence. The cases from South Dakota, New York, Wisconsin, Iowa, Missouri, and Michigan, cited in Justice Wolfe's memorandum, are all cases in which the person having the burden of proof sought to make the proof by the record, and the holdings are to the effect that the unverified roll cannot be used as evidence. In *United States* v. *Klink*, D. C., 3 F., Supp. 208, the court did not express its views on the question simply stating the decision of the Wyoming Supreme Court was binding on it and so it followed the *Brewer* v. *Kulien* case. As far as we have been able to check the cases, we have found none under statutory provisions like we now have and cited supra, holding the absence of any affidavit voids a tax sale. But as indicated above, where the rule prevails that matters must be proved by the records, many courts hold that the party who has the burden of making proof by the record cannot make it by unverified records. Thus the cases cited by Justice Wolfe, using the word "jurisdictional" are all cases in which the validity is not presumed as in this state, but proof must be made of every step by the records, and the holdings are simply in effect that it cannot be proved by an unverified record, and therefore when one who must supply the proof produces an unverified record which is not competent evidence he admits there is no evidence to warrant the sale. Under our statutes the validity is presumed and proved prima facie by the fact of a certificate of sale and issuance of an auditor's tax deed.

One further comment seems in order. As to those cases cited by Justice Wolfe to the effect that until the affidavit of the auditor is properly made the treasurer is without jurisdiction to send out notices, charge against property, or collect any taxes—they seem to be answered by the Su-

preme Court of California in the second appeal in *Miller* v. *Kern County*, 150 Cal. 797, 90 Pd. 119, 121, wherein the court held that such affidavits may be supplied after all tax proceedings are had up to delinquency, and that when the record is finally verified that is sufficient in the absence of a showing of proof of injury because of lack of verification. The court there says:

"The making and attaching of these affidavits to the assessment book is required, as stated by this court upon the former appeal, for the purpose of authentication. They are 'acts relating to the assessment or collection of taxes,' beyond doubt. Section 3885 of the Political Code is as follows: 'No assessment or act relating to assessment or collection of taxes is illegal on account of informality, nor because the same was not completed within the time required by law.' There was not an entire failure to perform the acts of making and affixing the affidavits. They were properly made and affixed, but not within the time specified in the Code. No injury was caused, and we cannot see that any injury could be caused, by the delay. By the express language of section 3885 the delay did not make the affidavits or the assessment in question illegal. They were lawfully made and attached, and if the assessment was previously invalid for lack of them, as had been, in effect, decided for the purposes of this case, it became valid and lawful the moment they became attached to the book on November 1, 1895. This is a reasonable doctrine, and we perceive no benefit, public or private, to be derived from holding the contrary. It is fully supported by the decisions in similar cases. *Buswell* v. *Supervisors*, 116 Cal. [351], 354, 48 P. 226; *People* v. *Eureka, etc., Co.*, 48 Cal. [143], 146; *Hart* v. *Plum*, 14 Cal. [148], 155; *Payne* v. *San Francisco*, 3 Cal. [122], 126; *State* v. *Mining Co.*, 15 Nev. [385], 388; *State* v. *Western U. T. Co.*, 4 Nev. [338], 344; *Walker* v. *Edmonds*, 197 Pa. [645], 647, 47 A. [867], 868; *Hooker* v. *Bond*, 118 Mich. [255], 257, 76 N.W. [404], 405; 1 Cooley on Taxation (3d Ed.) 486."

See also *McGowan* v. *Elder*, supra.

Bear in mind that in the case at bar no claim of injury or prejudice is made. There is no claim made that the lands were not properly assessed, and plaintiff himself put the assessment roll in evidence to prove a proper assessment. It is merely claimed there are informalities in certain instruments and records. We therefore resolve this point against appellant.

(4) What we have said answers the fourth question. The matters upon which plaintiff relies do not void defendants' title. But if they did so, plaintiff could not have his title quieted because he admits a valid assessment and tax levy against the property, its nonpayment and a sale thereof. Not having redeemed or offered to redeem, he is not entitled to have his title quieted against either the county or its assignees, the defendants. Defendants' tax title notwithstanding plaintiff's assault was properly quieted.

Judgment of the District Court is affirmed. Costs to Respondents.

MOFFAT, C. J., concurs.

McDONOUGH, J., concurs in the result.

WOLFE, Justice (concurring in part, dissenting in part).

I agree (1) that where mining property is involved, all the mining property, to wit: mining claims, mineral deposits, workings, machinery used in connection therewith, and all buildings and surface improvements upon or appurtenant to the mines or mining claims whether on or off the claim, and all mills, smelters, refineries or reduction works used *exclusively* for the purpose of reducing or smelting ores from a mine or mining claim *by the owner thereof,* shall be assessed as real estate and as a whole, all parts being considered as a unit for purposes of assessment, levy, and sale.

I agree (2) that where the surface and underlying mineral of a claim or land are *owned by the same person* as shown by the records, they may be advertised and sold as one, even though assessed separately. The reason for this is that where the surface property has adaptability for other than mining purposes and is actually used for such other purpose, it has an additional assessable value which should be shown in the same manner as im-

provements are required to be shown in the assessment. *Barnard Realty Co.* v. *Butte,* 50 Mont. 159, 145 P. 946.

Although this court seemingly held differently in *Utah Copper Company* v. *Chandler,* 45 Utah 85, 142 P. 1119, followed in *Utah Copper Company* v. *Eckman,* 47 Utah 165, 152 P. 178, to the effect that surface rights used for other than mining purposes constitute a separate estate, I incline to the view that they are not such until severed by the owner by some unequivocal act such as transfer of them to different persons, or transferring one and retaining the other. Otherwise, difficulties in regard to title by adverse possession present themselves. The requirement of separate *assessment* when both surface and mineral rights are in the same person is no more than that the improvements shall be separately assessed. The requirement is for the benefit of the taxpayer so that he may know what value is placed on the component parts of his property in case he desires to appeal to the board of appeals (Board of Equalization).

I agree (3) that a tax sale is not void merely because the certificate of sale is defective, hence failure to show the year on the certificate or inclusion of mere surplusage will not invalidate a sale *which may be otherwise proven. Bruno* v. *Madison,* 38 Utah 485, 113 P. 1030, Ann. Cas. 1913 B, p. 584. But the effect of such omission or surplusage, as far as making the certificate evidence, is quite another matter.

Sec. 6021, C. L. Utah 1917, as amended by Chap. 139 Laws of Utah 1921, provides, as far as material here:

"The certificate of sale herein provided for, when signed by the county treasurer and delivered to the purchaser, shall be prima facie evidence of the *regularity of all proceedings connected with the assessment notice, equalization, levies, advertisment, and sale of the property therein described, and the burden of showing any irregularity in any of the proceedings, resulting in the sale of property for the non-payment of delinquent taxes, shall be on him who asserts it.* * * *" (Italics added.)

(Note: In 80-10-35, R.S.U. 1933, a comma appears between the words "assessment" and "notice." Query: Under Sec. 6021, C.L. 1917, was the certificate prima facie evidence of a regular assessment?)

Assuming, for the instant, that the certificate is prima facie evidence that the steps mentioned above in Sec. 6021, C. L. Utah 1917 have been taken rather than evidence only of their regularity, can it be said to be prima facie evidence of a step when the certificate itself recited contrary-wise or is silent or ambiguous regarding that step? Can it be said, for instance, that it is prima facie evidence of a sale for the taxes of a certain year when the year is not mentioned? If so, it would seem that one would have to do nothing more than to introduce a certificate of sale in which the property was described, even though inadequately, and all the steps mentioned above would be proved regardless of the recitals. And if a skeleton certificate may serve that purpose how scanty a skeleton may it be? If oral evidence to supply the year omitted could be given to aid the certificate of sale as evidence, why not oral evidence of a misdescription or oral evidence to supplement an inadequate or ambiguous description in order to make the certificate prima facie evidence that all the steps had been taken? Regarding the failure to recite the year for which the tax was levied, the Supreme Court of Idaho in *White Pine Mfg. Co.* v. *Morey,* 19 Idaho 49, 112 P. 674, 675, said:

"The tax certificate recited that the tax for which the sale was made was levied and assessed for the year 1903, while the deed fails to show the year for which this tax had been levied and assessed. While this fact would not impair the *sale* or the validity of the *certificate*, it would impair the deed and render it inadmissible as evidence of compliance with the law."

I am inclined to the view that the certificate of sale must properly describe the property and the taxes (by naming the year for which levied) for the non-payment of which the sale took place, before it can be used as evidence. *Brink*

v. *Dann*, 33 S. D. 81, 144 N. W. 734. By the opinion of Mr. Justice Larson the certificate could not be evidence of a wrongful assessment which a recital therein would imply, such as the assessment for city taxes when the property was not in a city, but would be prima facie evidence of matters necessary to achieve the sale but not recited therein. Could any certificate purportedly pertaining to the land sold, be evidence of the fact that the proper steps leading to the sale had been taken as well as evidence of their regularity but not be prima facie evidence of an irregularity or invalidity which the recitals tend to show? It seems rather startling that the legislature should say: "You may introduce a certificate to show prima facie that all steps proper to sale have been taken but you cannot take the recitals in the certificate itself which show improper or invalid matters as prima facie proof that such have occurred."

It does not clearly appear in the case of *Burton* v. *Hoover*, 93 Utah 498, 74 P. 2d 652, in which the certificates were held to contain insufficient descriptions, whether the holding was merely that such certificates were insufficient to show a valid assessment and sale, in the absence of other evidence, or whether the case decided that an insufficient certificate of sale would itself invalidate the county's title. If the latter was intended, the case was incorrectly decided.

As far as using the certificate as prima facie evidence that the steps leading to it were properly taken, the description should be adequate and not ambiguous. Therefore, the certificate in this case may have been improperly admitted as proof of the fact that those steps had been taken, but as the opinion suggests, plaintiff may have cured the error by himself introducing evidence of the assessment, levy, notice of advertisement of delinquencies, etc. In the case of *Wall* v. *Kaighn*, 45 Utah 244, 144 P. 1100, while the criticisms are chiefly directed to the contents of the deed, the certificate of sale is also considered and found to be subject to the same criticism.

Sec. 80-10-38, R. S. U. 1933, relating to assessments void in part, was taken from California Political Code, Sec. 3811, which was repealed in 1895, and was never construed by the courts in that state. There might be some question whether this section would apply to a sale for city and city school taxes which presumably had never been assessed upon the land, and whether a certificate so reciting *would not show an unauthorized sale.* For an instance where property was sold for a tax *which had never been levied,* see *Fish* v. *Genett,* 56 S. W. 813, 22 Ky. Law Rep. 177.

I agree also (4) that if the steps leading to the sale and the sale itself were properly taken the fact that an improper auditor's deed was given would not aid plaintiff if his time to redeem had run out. There might still remain the question, however, of whether the period of redemption would expire until a deed sufficient to convey title had been executed—a question with which I need not now be concerned. Therefore, it is unnecessary to determine whether the auditor's deed was valid or void, since in any case if the proceedings to, and including sale for, delinquency were substantially followed plaintiff would possess only a right of redemption thereafter. The title could not be quieted in him. But query, under *Fisher* v. *Davis,* 77 Utah 81, 291 P. 493, would he not have the better title?

But what has been said in the opinion about the plaintiff's failure to offer to redeem is irrelevant and gives the impression that something was waived because of failure to assert a right. A tax sale, void because of excessive charges or for other reasons, would not become valid because the owner had not offered to redeem. And if the sale was valid no penalty attaches for failure to offer to redeem. What happens is that if the period of redemption runs out all rights are cut off. It is inaccurate to give the impression that if plaintiff had "sought to exercise" the right of redemption, he could then "complain" if the sale

was invalid. If the sale is invalid he need not move to correct it on peril of losing his right. If valid, the right of redemption is lost automatically on expiration of the period. In the case of *Intermill* v. *Nash*, 94 Utah 271, 75 P. 2d 157, it was intimated (page 284 of Utah Reports, page 163 of 75 P. 2d) that a person against whom a void summons had issued had some duty to move in the matter in order to prevent a valid judgment against him. In certain cases laches may operate in equity to prevent one from standing by while he knows another is acting on the assumption that he is no longer interested, (see concurring opinion Intermill v. Nash) but there is no duty to move to reform or supply the "deficiency" in the provisions which the law requires to be performed properly before he can be deprived of his property or have visited upon him an ensuing duty to move to protect himself. *Desert Irrigation* v. *Bishop*, 92 Utah 220, 67 P. 2d 210, is authority for the proposition that if the original sale be valid the failure to hold a valid May sale will not invalidate the original sale nor permit the owner to quiet title. But see *Fisher* v. *Davis*, supra. A former owner may still retain his right to redeem but he has no right to ask the law to decree title in him when the sale for delinquency is valid. An owner is not required to redeem from an illegal sale. 4 Cooley on Taxation, 4th Ed., Sec. 1562, p. 3070-71, citing *Fish* v. *Genett*, 56 S. W. 813, 22 Ky. Law. Rep. 177; *Simpson* v. *Meyers*, 197 Pa. 522, 47 A. 868.

But this is not a suit to redeem. As was said by the New Jersey Court in *Welles* v. *Schaffer*, 98 N. J. Eq. 31, 33, 129 A. 622, 623:

"A bill to redeem proceeds upon the assumption that the purchaser has a valid, inchoate, but defeasible, title by virtue of the certificate, and the only issue which the court can entertain and decide is whether the right to redeem is still open to the complainants."

This is a suit to quiet title and proceeds upon the theory that the original sale is void. The opinion states in regard

to the efficacy of the recitals in the tax deed to furnish proof of their having been performed:

"So no further proof is required of such person, as to any matters recited in the auditor's deed, than the deed itself. While such matters are established prima facie by the evidence indicated, it is not the only evidence and may be rebutted. So, although the deed contained a recital that the lands were assessed for city and city school taxes, such recital was rebutted by the evidence adduced by plaintiff himself when he put in evidence as part of his case in chief Exhibits D, G. and F, being the assessment, apportionment by State Tax Commission, the County Assessment Roll, and the County Tax computation on this property, respectively showing it was not assessed as within any city or town, and that no city or city school or town tax was figured or computed or levied against it."

Sec. 80-10-66, R. S. U. 1933, reads as follows:

"* * * shall recite substantially the amount of the tax for which the property was sold, the year for which it was assessed, the day and year of sale, the amount for which the real estate was sold, a full description of the property, and the name of the county or assignee; and when duly executed and delivered by the county auditor shall be prima facie evidence of the facts recited therein."

This section provides what shall be substantially recited in the tax deed and makes *those required recitals* prima facie evidence of the facts thus required to be recited. It is not required that the tax deed recite the different taxes levied against the property but only the *amount* of tax for which the property was sold. Hence, a recitation not only of the amount of the tax for which the property was sold but the sort of taxes levied which constituted the aggregate tax was not necessary. In *Price* v. *Barnhill,* 79 Kan. 93, 95, 98 P. 774, the court said:

"A statement in a tax deed of a fact showing that it was improperly issued is fatal to its validity, although occurring in the course of a recital not required by statute."

In *Ball* v. *Busch,* 64 Mich. 336, 31 N. W. 565, 570, it was said:

"The legislature did not intend to say that a paper shall be held prima facie valid, when it carries upon its face the evidence that shows it is void."

Other excerpts are given in *Wall* v. *Kaighn,* supra. But these come from cases of an earlier period when the rule of stricti juris was more rigidly applied. In this case the tax deed recited as a fact something which was not in fact true. The plaintiff sought to use the tax deed, not to prove the facts of which the statute makes the deed prima facie proof, but to show its invalidity. As above stated, such invalidity would not have availed him even if proved. It might serve only to show that he still had the right to reclaim the property. The plaintiff did not seek to use the tax deed to prove that city and city school taxes had been levied but to show that the tax deed was invalid because it recited some fact which was untrue. Hence, all that is said in the opinion regarding the right to rebut a recital in the deed seems to me to be irrelevant. The plaintiff does not claim such fact to be true. He claims it is an untrue recital which voids the tax deed. It is not in the case as a fact to be rebutted but as the statement of something which is not a fact and which, therefore, voids the tax deed. The statement in the main opinion that such matters (untrue, unrequired matters in the deed) are prima facie evidence of their existence is legally incorrect. The tax deed is only prima facie evidence of the facts required to be recited and recited therein.

I now turn to the question: What is the effect of the failure of the auditor to attach to the roll the affidavits required by law?

In California the court has held these affidavits absolutely essential to the right of the collector to enforce collection of taxes in the following cases: *Miller* v. *Kern County,* 137 Cal. 516, 70 P. 549; *Henderson* v. *Ward,* 21 Cal. App. 520, 132 P. 470; *Moyer* v. *Wilson,* 166 Cal. 261, 135 P. 1125; *Brady* v. *Davis,* 168 Cal. 259, 142 P. 45; *Leonard* v. *Jaffray,* 175 Cal. 371, 165 P. 956; *Butterfield* v.

*Union Hollywood Water Co.*, 39 Cal. App. 605, 179 P. 524. The same result was reached in *Brewer* v. *Kulien*, 42 Wyo. 314, 294 P. 777; *Sidlo, Simons, Day & Co.* v. *Phillips*, 48 Wyo. 390, 49 P. 2d 243; *United States* v. *Klink*, D. C., 3 F. Supp. 208; *Friedner* v. *Galveston*, Tex. Civ. App., 229 S. W. 950; *Taber* v. *State*, 38 Tex. Civ. App. 235, 85 S. W. 835; *Clayton* v. *Rehm*, 67 Tex. 52, 2 S. W. 45; *Richardson* v. *Howard*, 23 S. D. 86, 120 N. W. 768; *Warfield-Pratt-Howell Co.* v. *Averill Grocery Company*, 119 Iowa 75, 93 N. W. 80; *Woodbine Savings Bank* v. *Tyler*, 181 Iowa 1389, 162 N. W. 590; *People* v. *Pulver*, 226 App. Div. 416, 235 N. Y. S. 655; *People* v. *Golding*, 55 Misc. 425, 106 N. Y. S. 821; *People* v. *Suffern*, 68 N. Y. 321; *Brase* v. *Miller*, 195 N. Y. 204, 88 N. E. 369; *Flint* v. *Sawyer*, 30 Me. 226; *Howard* v. *Heck*, 88 Mo. 456; *Burke* v. *Brown*, 148 Mo. 309, 49 S. W. 1023; *Maxwell* v. *Paine*, 53 Mich. 30, 18 N. W. 546; *Westbrook* v. *Miller*, 64 Mich. 129, 30 N. W. 916; *Newkirk* v. *Fisher*, 72 Mich. 113, 40 N. W. 189; *Hall* v. *Kellogg*, 16 Mich. 135; *Kelly* v. *Craig*, 27 N. C. 129; *State* v. *Lehman*, 100 Fla. 1401, 131 So. 333; *Marsh* v. *Supervisors of Clarke County*, 42 Wis. 502; *Power* v. *Kindschi*, 58 Wis. 539, 17 N. W. 689, 46 Am. Rep. 652; *McGhee* v. *Sampselle*, 47 W. Va. 352, 34 S. E. 815; *Ream* v. *Stone*, 102 Ill. 359; *Lamb* v. *Farrell*, C. C., 21 F. 5. And our own case of *Asper* v. *Moon*, 24 Utah 241, 67 P. 409. On the other side are the cases cited in the opinion of Mr. Justice Larson including the Idaho cases, especially, *Armstrong* v. *Jarron*, 21 Idaho 747, 125 P. 170, which construed a statute similar to our Sec. 80-11-7 regarding informalities not invalidating acts relating to assessment or collection of taxes. The cases first above cited hold the omission of the affidavit to be more than an informality.

There are, of course, a number of states wherein it is provided that a tax sale may be avoided only for certain specific causes, as in North Dakota it is provided (Sec. 2193, Comp. Laws of North Dakota 1913) that a tax sale may be set aside only when it is proved; that the property

was not subject to taxation, or that the taxes were paid prior to sale, that notice of sale was not given, as required by law, or that the property was not offered for sale to the party who would pay the amount for which the same was to be sold. In Mississippi a tax deed may be invalidated only by proof that the land was not liable to sale for the taxes, that the tax had been paid before sale, or that the sale had been made at the wrong time or place. Sec. 3273, Miss. Code, 1930.

Florida by an Act passed in 1929 provides that property owners are charged with the duty of ascertaining the amount of tax and paying the same before date of delinquency; all provisions of law relating to assessment and collection of taxes are declared to be directory only, for orderly procedure of the officers and not primarily for the protection of the taxpayer; no sale or conveyance is void except on proof that the property was (1) not subject to taxation, (2) that the tax had been paid before sale, or (3) that the property had been redeemed prior to execution of conveyance. Laws of Florida 1929, c. 14572, p. 1100.

Under such statutes the rule would be different from the rule under our statute. Earlier tax decisions stressed the necessity for strict compliance with provisions of the tax statutes on the theory, as stated in *Tintic Undine Mining Co.* v. *Ercanbrack,* 93 Utah 561, 567, 74 P. 2d 1184, that a person could not be deprived of his property except by strict compliance to all the "proceedings which culminate in the sale." The theory was that the taxing officials did not act by warrant of law unless they strictly complied with every provision of the law. *Tintic Undine Mining Co.* v. *Ercanbrack,* supra, 93 Utah, p. 568, 74 P. 2d 1184, 1187. In the Ercanbrack case we were not content to hold that the rule of stricti juris applied. We used the superlative form strictissimi juris. (93 Utah p. 567, 74 P. 2d 1184). But some jurisdictions have relented somewhat, possibly because collection of taxes became difficult, because taxpayers could rest supine relying on the inevitable tendency for

human error to protect them, and because diligent lawyers searching the records could always find some flaw. In consequence, tax revenues suffered. Thus the view was adopted that mere irregularities would not void a sale or prevent a purchaser from obtaining good title. Defects must be substantial. Contradictory decisions during this period can be explained in many cases by rulings of the court that certain deficiencies merely constituted irregularities distinguished from substantial defects. Then crept in the concept that the test should largely be one of whether the step was one upon which the taxpayer could or did rely (*Armstrong* v. *Jarron,* supra) whether he was prejudiced thereby, or whether, as was said in *Richardson* v. *Howard,* supra, it was for the taxpayers' protection. Naturally a swing from the rule that the tax officials acted without warrant of law when they departed substantially from *any* requirement enforced by the tax laws, to a concept that when the departure was one only from a provision merely directionary on the officials which could not affect the taxpayer or in any way prejudice him and therefore would not affect the sale or the title of the purchaser, replaced simplicity with complications. The later rule required the courts to specify what was or was not for the benefit or protection of the taxpayer or what would or would not tend to mislead or prejudice him or what provision was for office administration or merely directory and what was not. As shown above, legislation cleared up this difficulty in many of the states but not entirely in our own for the reason that we have no legislation such as has North Dakota, Mississippi, or Florida.

I think we should differentiate those matters which are designed to protect the taxpayer in the process of the taxation steps from those which do not touch or affect him in that they are designed to obtain uniform, convenient, and perfected office practice and administration and thus touch the taxpayer only remotely. We should include in the first type, steps such as assessment, notice, sale, etc., and require a strict performance in all matters of substance but

allow for omissions or defects which are insubstantial, especially when the taxpayer could in no way reasonably be misled by them—in short, we should adopt a common sense view.

I would think with the great majority of the decisions that the authenticating certificate of the auditor is a matter of substance and for the protection of the taxpayer. It tends to insure care and accuracy and the taxpayer may rely upon it in assuming that all corrections in his favor have been made and that the assessment as it appears over the auditor's certificate is the one finally completed after action by the Board of Equalization. But Sec. 80-5-30 reads that

"A failure to make or subscribe such affidavit, *or any affidavit,* will not in any manner affect the validity of the assessment." (Italics added.)

This section may be read to mean that the failure of the assessor to offer the definitely required affidavit or in fact, any affidavit, shall not invalidate the assessment. It is contained in a chapter which is entitled "Further Duties of County Assessors" and appears, therefore, to pertain only to assessors and not to the auditor's certificate provided for in Sec. 80-8-7. It is difficult, however, to see why the Legislature should intend that the failure of the assessor's certificate should not invalidate the assessment but omission of the auditor's certificate should invalidate a sale. The first seems even the more important as an assurance to the taxpayer. I think Sec. 80-5-30 must be taken as an expression of legislative policy which carries over as to the auditor's certificate. And since this is in accordance with the growing tendency not to declare departures or omissions fatal to the validity of the tax when the taxpayer knows he owes it and has not actually been misled or jeopardized, I shall for the reasons herein expressed concur in regard to this point.

I cannot subscribe to the statement that plaintiff cannot introduce the assessment book to show a departure from it by the auditor's deed in order to show that the deed is invalid, and at the same time, or subsequently, attack the assessment itself as invalid. I know of no principle in law which requires a party to elect between or among infirmities. For instance, Sec. 40-3-7, R. S. U. 1933, sets forth the interlocutory decree "shall specifically provide that it shall not become absolute until the expiration of six months from the date of its entry." Assuming this to be a mandate of the legislature, certainly a party could attack the decree on the ground that it did not contain such provision and also on a more fundamental ground that the court never had jurisdiction to make a decree. And in the case at bar I see no reason why the plaintiff cannot say "Even if the assessment is valid the auditor's deed does not comport with it and hence the latter is not valid for that reason, but even if the auditor's deed passes the test of validity in this regard the assessment itself for other reasons is totally invalid." The procedure is simple: The court first determines whether the assessment itself is valid. If not, that ends the matter. If valid, it passes on to determine whether the auditor's deed is invalid for the reason that its recitals do not conform as required by law. If the plaintiff reversed the procedure by first attacking the assessment as invalid and on being overruled then used the assessment, so held valid, in an attempt to show the auditor's deed invalid, we would not think the positions inconsistent. I do not think the order of assertion material. But as said before, proving the auditor's deed invalid would avail plaintiff only to the extent of showing that he still had a right to reclaim his property. Nor do I think it necessary at this time to hold that the auditor's affidavit is only to make the record prove itself. True, it is far narrower than the assessor's certificate which certifies to honest performance of duties in some particularization. The auditor's certificate largely partakes of the nature of an authentication of records

since it pertains altogether to acts involving proper recording of the acts of the county board of equalization, the State Tax Commission, and his own acts in reference to the record. But at this time I would not want to say that it serves only the purpose of authentication rather than a broader and more substantive purpose. I do not think this case requires us now to decide that question.

I concur in the result but only in those parts of the opinion as indicated by my discussion above.

PRATT, J., dissents.